Sucesión de Isabelo Mangual Ayala, etc., demandada y apelada, *v.* Frank P. Hastings y Glen Falls Indemnity Co., demandados y apelante el primero.

Núm. 8017.—*Sometido:* Enero 12, 1940. *Resuelto:* Enero 31, 1940.

*R. Castro Fernández* y *José López Baralt,* abogados del apelante; *C. Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados de la apelada.

El Juez Asociado Señor De Jesús emitió la opinión del tribunal.

Mientras Frank P. Hastings guiaba un automóvil de su propiedad asegurado por Glenn Falls Indemnity Co , arrolló a Isabelo Mangual, produciéndole la fractura de la base del cráneo, a consecuencia de lo cual falleció dos días después.

Los herederos de Mangual instituyeron este pleito contra Hastings y la compañía aseguradora en reclamación de los daños que alegan haber sufrido por la muerte de su causante. Aunque la demanda no prosperó contra la aseguradora, fué declarada con lugar en cuanto a Hastings, condenándosele a pagar a los demandantes la cantidad de $3,000 por concepto de indemnización, más las costas, incluyendo $300 para honorarios de abogado. Contra esta sentencia y contra la resolución aprobatoria del memorándum de costas interpuso el demandado este recurso, que basa, en lo que a la sentencia respecta, en haber errado la corte *a quo* en la apreciación de la prueba. Admite el apelante que la evidencia es contradictoria, pero sostiene que debió ser creída la suya porque la versión de los apelados en cuanto a la manera en que ocurrió el accidente es físicamente imposible.

■■ La posición asumida por el apelante requiere que hagamos un análisis de la prueba de una y otra parte. Según los apelados, Isabelo Mangual era un campesino que poseía doce cuerdas de terreno que personalmente cultivaba, cuyos frutos suministraban el sustento de su familia. El 4 de septiembre de 1938 llevó al mercado de Carolina productos agrícolas y luego de venderlos se disponía a regresar al hogar en compañía de ciertos parientes y amigos que se hallaban con él. La Calle Muñoz Rivera se prolonga en la carretera que de Carolina conduce a Canóvanas y en el margen izquierdo de esa calle, pegado a la acera y de frente para Canóvanas, se hallaba estacionado el automóvil que Isabelo y sus compañeros se proponían tomar. Antes de ocupar su asiento Mangual, que traía en un saco dos o tres libras de pan, carne, y dulces que había comprado para sus hijos, trató de asegurar el saco amarrándolo con una soga por el lado derecho del parabrisas del automóvil. Para realizar esta operación tuvo necesidad de colocarse por el lado derecho del vehículo opuesto a la acera y mientras ataba el saco, el automóvil del demandado, que venía de Canóvanas a una velocidad exagerada sin dar aviso alguno

con aparato de alarma, pasó tan cerca del automóvil junto al cual se hallaba Mangual que arrolló a éste, lanzándolo al suelo, produciéndole ciertas lesiones en el hombro derecho, y en la cara, así como la fractura de la base del cráneo. Inmediatamente fué conducido el herido al Hospital Municipal de Carolina, donde permaneció desde las doce de aquel día hasta el siguiente, en que fué trasladado al de San Juan, donde falleció un día después.

Según la prueba del demandado apelante, él conducía su automóvil a una velocidad moderada, tocó *klaxon* al aproximarse al sitio donde se hallaba el interfecto, y pasó como a 4 ó 5 pies de separación de éste, pero en los precisos momentos en que pasaba junto al interfecto, la soga con que estaba tratando de amarrar el saco se reventó, lo que dió motivo a que el interfecto perdiese el equilibrio y cayera de espaldas sobre el automóvil del apelado, produciéndose así el trauma que le causó la muerte.

Los testigos de los demandantes no pueden precisar la manera en que el automóvil del demandado vino por primera vez en contacto con el cuerpo del interfecto. Unos declaran que el primer golpe lo recibió Mangual en la rodilla, otros que fué en la cadera, y algunos en el brazo, pero todos coinciden en que fué por el costado derecho del interfecto. Como los médicos que lo asistieron en Carolina primero y en San Juan después declararon no haber encontrado otras lesiones que las anteriormente indicadas, es decir, la del hombro, la cara y la base del cráneo, la representación legal del apelante infiere de ello que la versión de los testigos de los apelados es físicamente imposible, porque habiendo recibido el golpe del cráneo con el tapalodo delantero, para que tal cosa pudiera suceder era necesario que recibiese antes un golpe que permitiese que la cabeza del interfecto chocase con el tapalodo, pues hallándose como se hallaba, de pie, la cabeza se encontraba en un plano más alto que el tapalodo. El hecho de que los testigos no puedan dar una explicación exacta de la manera en que el automóvil del demandado vino

en contacto por primera vez con el cuerpo del interfecto, no implica necesariamente la imposibilidad de que el accidente hubiese ocurrido sustancialmente en la forma por ellos descrita. ¿No es acaso posible que en la confusión que en el momento debió producirse escapase a la percepción de los testigos cualquier movimiento que pudiera haber hecho el interfecto tratando de defenderse, al confrontarse de súbito con la situación de inminente peligro que lo amenazaba?.

La teoría del demandado no es tan convincente como pretenden sus defensores. Según hemos indicado anteriormente, el saco que trataba de amarrar el interfecto pesaba poco y cuando realizaba tal operación se hallaba con sus dos pies en el suelo, sin que fuera necesaria la aplicación de una fuerza extraordinaria para llevar a efecto su propósito. Aceptando que la soga se hubiera roto, es muy improbable que el interfecto cayera de espaldas, siendo él, según resulta de la prueba, un hombre saludable y fuerte, sobre todo cuando no tenía que asumir una posición violenta para amarrar el saco, dada la altura del parabrisas. Es verdad que algunos testigos de los demandantes declararon que la soga se rompió y que en los momentos del accidente el interfecto trataba de añadirla, pero también manifestaron que la soga era vieja y gastada.

Según la prueba de los apelados y la declaración del policía Morales, llamado por el demandado, a pesar del sitio que ocupaba el automóvil del interfecto había espacio suficiente para dar cabida a dos automóviles más.

Que el demandado venía a una velocidad exagerada, no obstante hallarse en zona urbana y especialmente cerca de la intersección de dos calles, lo demuestra de manera concluyente el hecho de que vino a parar su automóvil después del accidente a bastante distancia del carro del interfecto, dejando las huellas producidas en la aplicación de los frenos por una extensión de unos veinte pies, las que empezaron como doce pies detrás del automóvil del interfecto. La declaración del propio demandado apelante demuestra que

pasó tan distraído por el lado del interfecto que ni siquiera advirtió su presencia junto al automóvil. Veámoslo:

"P. ¿Y dice usted que al pasar por el lado del carro público, usted sintió el golpe de este hombre?

"R. Sí, sentí el choque.

"P. ¿Pero antes de sentir ese choque, usted había visto el hombre allí?

"R. Había visto dos o tres parados al lado del carro.

"P. ¿Pero al lado del automóvil público ése?

"R. Sí.

"P. ¿Había visto al hombre del accidente?

"R. Yo no me fijé en más personas.

"P. ¿Pero si antes del accidente usted había visto a este hombre al lado del carro público?

"R. Sí.

"P. ¿Mucho antes?

"R. Sí, bastante antes.

"P. ¿Como a qué distancia?

"R. Bueno, desde la curva, que sería sesenta metros.

"P. ¿Es decir que sesenta metros antes de llegar al carro público usted había visto a este hombre amarrando un bulto allí?

"R. Yo no me fijé en lo que estaba haciendo.

"P. ¿Pero usted lo vió bien?

"R. Ví el carro y las personas paradas al lado del carro.

"P. ¿Cómo diez metros o diez yardas antes de llegar a ese sitio, usted lo vió a él?

"R. Bueno, sí, las personas.

"P. ¿Al que estaba amarrando el bulto lo vió?

"R. Yo no ví a nadie amarrando bulto; yo ví las personas que me fijé mucho en ellas porque estaban paradas." (T. de E., págs. 370 y 371.)

Considerada la prueba de una y otra parte, no podemos convenir con el apelante en que la corte inferior incurrió en error manifiesto en la apreciación de la prueba.

■ Arguye el apelante que la muerte de Mangual fué motivada por haberlo trasladado del Hospital Municipal de Carolina al de San Juan en una guagua. Es un hecho cierto que él fué trasladado a San Juan, pero nada existe en la

prueba que demuestre que ésa fué la causa de la muerte o que de haberlo dejado en Carolina no hubiese fallecido. Por consiguiente, este argumento del apelante, basado como está en una mera conjetura huérfana de apoyo en la prueba, no puede causar la revocación de la sentencia.

■ No abusó de su discreción la corte sentenciadora al incluir en el pronunciamiento de costas la partida de $300 para honorarios de abogado. Habiendo dado crédito a la prueba de los demandantes, pudo la corte inferior estimar que el demandado apelante fué temerario al no allanarse a pagar a los demandantes una razonable compensación por los daños por él causados.

■ Sólo nos resta considerar la partida de $25 del memorándum de costas concedida a los demandantes como honorarios del testigo Dr. Comas. Este testigo, conforme resulta del récord, vino a declarar sobre el estado en que se hallaba Mangual al llegar al Hospital Municipal de San Juan, el tratamiento a que lo sometió y el hecho de su muerte. Su testimonio sobre estos extremos no requería de él una preparación especial previa para venir a declarar. En tales condiciones el médico, como cualquier otro profesional, se considera como un testigo ordinario y no debe recibir otra compensación que la señalada en el arancel para los testigos, es decir, $2 diarios. Véase el artículo 327 del Código de Enjuiciamiento Civil. Véase también por analogía 4 *Wigmore on Evidence,* sec. 2203, págs. 682 *et seq.*

*Por lo expuesto, procede modificar la resolución aprobatoria del memorándum de costas en lo que respecta a la partida de $25 concedida como honorarios al testigo Dr. Comas, la que se reduce a $2, y así modificada dicha resolución, se confirma, conjuntamente con la sentencia apelada.*

El Juez Asociado Sr. Wolf está conforme con el resultado.*

---

* NOTA: Véase el prefacio.