BALTAZAR RIVERA SIERRA, ETC., peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE HUMACAO, HON. JOSÉ DÁVILA ORTIZ, JUEZ, demandado; INSURANCE COMPANY OF PUERTO RICO, interventora.

*Número:* O-68-330        *Resuelto:* 11 de junio de 1969

*Carmelo Ávila Medina* y *Roberto Ávila Rivera,* abogados del peticionario.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En la Sala de Humacao del Tribunal Superior se tramitaba el caso de *Baltazar Rivera Sierra y otros* v. *Insurance Company of Puerto Rico y otros*, Civil Núm. 66-1881, en reclamación de daños y perjuicios. El Dr. Bolívar Patiño había sido citado para que compareciera a declarar como testigo y no lo hizo. Lo que tenemos en este recurso ante nuestra consideración son los procedimientos y determinaciones de la Sala sentenciadora relacionados con un incidente de desacato por la incomparecencia del Dr. Bolívar Patiño.

Se trata de una muerte ocurrida como consecuencia de lesiones en un accidente de automóvil. La autopsia de la víctima la practicó el Dr. Bolívar Patiño en el Hospital de Distrito de Fajardo, institución en que él presta sus servicios como médico-patólogo. Por este servicio el Dr. Patiño recibe una remuneración de $1,850 mensuales.

Como condición previa para su comparecencia en corte y declarar sobre la autopsia que practicara, el Dr. Patiño había exigido a los demandantes que le pagaran la cantidad de $1,000. Se citó la vista mencionada para determinar si el Dr. Patiño tenía derecho a cobrar esos honorarios y cuál sería la cantidad razonable. Celebrada la vista, la Sala sentenciadora determinó que el Dr. Patiño tenía derecho a cobrar honorarios a la parte demandante por su comparecencia al tribunal, y en 3 de diciembre de 1968 la Sala sentenciadora dictó resolución concediéndole a la parte demandante un término que vencía el 15 de enero de 1969 para que consignara en la secretaría del tribunal la suma de $400 fijada como compensación "por la comparecencia del Dr. Bolívar Patiño Arca como testigo de la parte demandante."

En 24 de enero de 1969 este Tribunal dictó resolución concediendo al Tribunal Superior, Sala de Humacao, y a la parte interventora Insurance Company of Puerto Rico un término para que mostraran causas por las cuales no debía expedirse el auto de *certiorari* solicitado y anularse la resolución dictada por el tribunal de instancia en los términos ya

referidos. En contestación a la anterior resolución compareció la propia parte peticionaria. No comparecieron las partes recurridas.

Por la significación que el asunto tiene para la administración de la justicia en Puerto Rico, creemos necesario transcribir algunos criterios que se vertieron en la vista celebrada ante la Sala sentenciadora sobre el incidente. La demandante asumió la posición de que no venía obligada como cuestión de derecho a depositar previamente cantidad alguna por concepto de los honorarios que reclamaba el facultativo. Aclaró que no se trataba de un caso en que se hubieran contratado los servicios médicos de una persona para producir testimonio pericial y de opinión contrario a otros criterios médicos también periciales y de opinión. Que se trataba de testimonio de lo que había percibido el Dr. Patiño como consecuencia de desempeñar el cargo de médico-patólogo del Hospital de Distrito y por haber realizado una autopsia en el desempeño de dicho cargo.

"HON. JUEZ:

¿Sometida la cuestión?

LCDO. ÁVILA:

Sometida la cuestión.

HON. JUEZ:

Aunque a primera vista parecería que el compañero tiene razón, lo cierto es que no tiene razón en su apuntamiento. La cuestión está resuelta por el Tribunal Supremo de Puerto Rico adversamente al compañero. El Tribunal Supremo de Puerto Rico ha resuelto que aun cuando los doctores que trabajan en los hospitales municipales con el Gobierno y reciben un sueldo comparecen a declarar ante los tribunales hay que pagarles sus honorarios igual que si se tratara de cualquier otro perito. Es una función que rebasa los límites de su cargo con el Gobierno de Puerto Rico.

LCDO. ÁVILA:

Yo entiendo, Vuestro Honor, si me permite respetuosamente, que eso es así si se trata de rendir una opinión pericial, pero

no cuando se va a declarar sobre ciertos hallazgos encontrados durante la función inherente a ese cargo que se desempeña.

HON. JUEZ:

No, la resolución del Tribunal es adversa al compañero en ese sentido, es más, si el criterio del colega es ese y el compañero no deposita la cantidad que justa y razonablemente el Tribunal fije por concepto de compensación para el doctor, *el Tribunal lo exime de declarar en el caso,* a menos que el compañero esté en disposición de pagar o depositar o consignar en la Secretaría del Tribunal una cantidad que el Tribunal determine que es la cantidad justa y razonable por concepto de su comparecencia a corte." (Énfasis puesto.)

Declarando el Dr. Patiño Arca, se manifestó así según el récord:

"P—¿Usted recuerda haberle practicado una autopsia a quien en vida fue Lydia Esther Rivera Cruz que falleció el 19 de junio de 1966?

R—Le practiqué la autopsia médico-legal exactamente el día 20 de junio de 1966 a las doce y quince minutos pasado meridiano.

P—Debe entenderse que eso fue en horas del medio día.

R—Fuera de mis horas laborables.

P—Quince minutos fuera de horas laborables.

R—Empecé a trabajar quince minutos después que dejé yo mi horario regular.

P—Bien. Y terminó fuera de horas laborables también.

R—Posiblemente, no recuerdo el tiempo que me tomó.

P—¿Por ese trabajo usted cobró?

R—Cobré veinticinco dólares según comprobante que aquí tengo.

P—¿Doctor, y en el día de hoy usted está en horas laborables en este Tribunal?

R—En el día de hoy estoy faltando al hospital, no he ido al hospital porque he acudido a una citación compulsoria de este Tribunal.

P—¿A qué hora se le citó para venir al Tribunal?

R—Se me citó a las dos de la tarde.

P—¿Y por la mañana no fué al hospital?

R—No, porque estaba aquí en otro juicio criminal, así que he estado todo el día aquí.

P—Pero no faltó al hospital por el motivo de estar aquí en este caso.

R—Por la citación del Tribunal.

P—¿Por la citación para este caso?

R—A las dos de la tarde.

P—Es decir, que usted de cualquier forma no iba a ir por la mañana a trabajar al hospital.

R—Porque estaba citado en otro caso.

P—Por eso, entonces el motivo de no haber ido al hospital no es este caso, sino que era otro caso anterior.

R—No, usted no me entiende, el otro caso se vió esta mañana.

P—Por eso.

R—Ahora he venido a las dos de la tarde citado por el Tribunal.

P—¿Y ésta mañana fué al hospital?

R—Estuve aquí no le estoy diciendo en otro caso criminal.

P—Citado para otro caso por la mañana.

R—Para otro caso criminal, estuve toda la mañana viendo otro caso criminal, luego fuí a almorzar y he regresado a las dos de la tarde citado para este caso.

P—¿Por la mañana no le cobra usted al Gobierno?

R—Estoy obligado por ley a venir a los Tribunales.   ·

P—La pregunta mía no es si está obligado, si le cobra.

R—Yo cobro, el Tribunal me paga cuando yo asisto, concurro y presto declaración y si no también me la pagan, por venir.

P—Lo importante es que venga y cobra, ¿correcto?

R—Que vengo y cobro es correcto, sí señor.

P—¿Cuánto le pagan?

R—Aquí me pagan de acuerdo a una tarifa de 1912 que establece diez dólares por peritaje en los casos criminales.

P—Nada más, señor Juez.

HON. JUEZ:

P—¿Doctor, cuánto estima usted que es el valor justo y razonable por su comparecencia al Tribunal en la tarde del día de hoy a declarar como testigo de la parte demandante en este caso?

R—Señor Juez, hasta el 1ro. de julio de 1967 yo exigía por estas comparecencias $400.00, hay constancia en este Tribunal, hay una decisión de este Tribunal de una controversia que se suscitó precisamente por el monto que yo cobré con el Lcdo. Manuel Orraca Torres. Me han pagado esa cantidad de $400.00

en este mismo Tribunal el Lcdo. Ramos Cabán. Me ha pagado esa misma cantidad en el Tribunal de Guayama el Lcdo. Mariano Ríos. No me pudo pagar pero habló conmigo en mi oficina y se comunicó conmigo en otras circunstancias el Lcdo. Oscar Brizzie que está aquí presente, y el Lcdo. Julio C. Rivera, o sea, que esa era una cantidad que yo tenía establecida fija hasta el mes de julio de 1967.

El Lcdo. Carmelo Ávila Medina sabe que yo cobro esa cantidad porque un caso que él me requirió en 1961 y que me lo pagó en 1965 después de cuatro años que reclamé ese pago aparecían los $400.00, y tengo comunicaciones aquí dirigidas al Licenciado y respuestas de él que puedo ofrecer al Tribunal, en que aparece desde entonces 1961, cobrándose esa cantidad por mi comparecencia.

En consecuencia yo creo que si se va a ajustar mi pretención de cobrar a lo que yo tenía estimado hasta 1967 serían $400.00, pero después de 1967 hasta el presente cuando yo haciendo un esfuerzo extraordinario conseguí mi especialización de Patólogo Forense, o sea, que incursioné algo más en el campo que ya colinda con el campo de los señores licenciados, los señores abogados, yo establecí que estaba cobrando muy poco, porque también en Puerto Rico de esa época a la fecha había superado la expectativa de los abogados en el cobro de los casos civiles.

Específicamente en este caso yo me enteré por un empleado que trabaja a mis órdenes que es pariente de uno de los que está en la parte demandada que se había incoado una demanda por $150,000.00 y que los abogados la estaban llevando por el 45% de lo que resultara esa demanda.

En consecuencia yo pedí y lo pedí por escrito al Estudio Ávila $1,000.00 por mi comparecencia al Tribunal. Eso no se me contestó nunca, el Estudio Ávila y su representante aquí presente el Lcdo. Roberto Ávila, no me contestaron esa carta que fue suscrita por mi el 20 de mayo de 1968 y se pretendió que viniera yo compulsoriamente a través de una citación del Tribunal el día 14.

De manera que contestando su pregunta señor Juez, yo creo que si se ajusta al presente la realidad y no me puede pagar los $1,000.00 que yo exijo, lo que Su Señoría fije para mi estará muy bien recibido, cualquier cantidad que sea, porque vendrá del señor Juez a quien yo respeto muchísimo.

LCDO. ÁVILA:

Si me permite una pregunta, o varias preguntas.

P—¿Entonces debo entender yo que usted cobra en proporción a lo que usted espera que la parte demandante vaya a recobrar de la demanda?

R—No, señor Licenciado. Yo he establecido desde el mes de julio de 1967 que demandas hasta quince mil dólares cobro $500.00, y por encima de esa cantidad $150,000.00 (¹) pagaderas por adelantado con tiempo prudencial para preparar el caso para evitar lo que frecuentemente ocurre con los señores abogados que me han solicitado que son muy difíciles de pagar, a veces imposible o pagan lo que quieren como ha sido el caso siempre Lcdo. Carmelo Ávila Medina y el Estudio Ávila, tengo los comprobantes que sustentan esa posición y correspondencia habida en los casos que he llevado que han sido solamente dos para suerte mía.

P—La pregunta mía usted la contestó, que usted cobra en proporción al monto de la reclamación de la demanda.

R—Exactamente.

P—Pues nada más.

HON. JUEZ:

Puede retirarse, Doctor.

¿Alguna otra prueba?

LCDO. ÁVILA:

Ninguna prueba, Vuestro Honor.

HON. JUEZ:

¿Sometida la cuestión?

LCDO. ÁVILA:

Sometida la cuestión.

HON. JUEZ:

El Tribunal estima con vista de la declaración del Dr. Bolívar Patiño Arca que la suma de $400.00 es la compensación justa y razonable por concepto de honorarios del Dr. Bolívar Patiño Arca como testigo de la parte demandante en esta acción.

Debemos reiterar, es decir, debemos ratificar que no se trata de una acción de naturaleza criminal, sino de una acción de naturaleza civil, y que el testimonio del Dr. Bolívar Patiño Arca ha demostrado que él practicó la autopsia fuera de horas laborables

---

(¹) Así aparece en el original.

y que ha comparecido al Tribunal por orden del Tribunal, sujeto a que el Tribunal determinaría y decidiría el monto justo y razonable de sus honorarios.

El Tribunal estima que la suma de $400.00 hoy por hoy es una cantidad justa y razonable por concepto de honorarios de un Patólogo Forense que ha tenido su 'board', y de la . . ., del prestigio del Dr. Bolívar Patiño Arca.

LCDO. ÁVILA:

Bien, Vuestro Honor, yo no tengo el dinero para depositarlo y creo que no lo depositaré, mejor renuncio al caso antes de yo tener que pagar los $400.00.

HON. JUEZ:

Entonces la parte demandante no está en disposición de.

LCDO. ÁVILA:

De depositarlos en este momento.

HON. JUEZ:

La parte demandante no está en disposición de depositar, de consignar esa suma.

LCDO. ÁVILA:

En este momento.

HON. JUEZ:

¿Y cuándo la podría consignar?

LCDO. ÁVILA:

Yo solicitaría, Vuestro Honor, que me diera sesenta días para yo conferenciar con todos los que comprenden la parte demandante que son varias personas.

HON. JUEZ:

El Tribunal quiere advertir lo siguiente, quiere apercibir a los compañeros sobre lo siguiente: El Tribunal no va a oir el testimonio del Dr. Bolívar Patiño Arca mientras no se consignen sus honorarios.

LCDO. ÁVILA:

Yo quiero que se me notifique por escrito la resolución."

. . . . . . . .

HON. JUEZ:

Perdón, Ávila Rivera, ha manifestado, ha expresado su firme propósito de no consignar esa suma porque él estima que en derecho no viene obligado a hacerlo.

Lcdo. Ávila:

Así es, señor Juez.

Hon. Juez:

El Tribunal respeta ese criterio, pero el Tribunal no oirá el testimonio del Dr. Bolívar Patiño Arca hasta tanto no se consignen sus honorarios."

En el curso de la vista la Sala sentenciadora aludió varias veces a que su dictamen estaba sostenido por la ley y por decisiones de este Tribunal. Específicamente no mencionó precepto alguno.

En procesos criminales la Constitución del Estado Libre Asociado de Puerto Rico concede el derecho a obtener la comparecencia compulsoria de testigos a su favor. Estamos ante un procedimiento civil. Dispone el Art. 7 del Código de Enjuiciamiento Civil ·(ed. 1933) que toda corte tiene poder: ". . . 6. Para obligar a que comparezcan las personas que hayan de prestar declaración de una acción o procedimiento pendiente ante ella en los casos y en la forma dispuestos en este Código." El Art. 28 del propio cuerpo legal dispone que todo funcionario judicial tiene facultad: "3. Para obligar a comparecer las personas que hayan de prestar declaración en un procedimiento seguido ante él en los casos y en la forma dispuestos en este Código."

Estatuye el Art. 38 de la Ley de Evidencia que todas las personas, sin excepción, fuera de lo especificado en los Arts. 39 y 40, que puedan percibir y, percibiendo, comunicar sus percepciones a otras personas, son aptas para testigos.

Los Arts. 110 a 122 de la Ley de Evidencia regulan lo pertinente a los medios de presentación compulsoria de testigos. Dispone el Art. 112 que una citación o emplazamiento se diligenciará mostrando personalmente al testigo el original y entregándole una copia, o una boleta, conteniendo la sustancia del auto, "y dándole u ofreciéndole al mismo tiempo, si lo solicitare, la nota de los honorarios a que tuviere

derecho *por el viaje de ida y vuelta al sitio designado y un día de asistencia en el mismo.*"

El Art. 114 de la Ley estatuye que un testigo no está obligado a comparecer como tal ante ningún tribunal, juez o funcionario, *fuera del distrito en que residiere,* a menos que la distancia desde el lugar de su residencia al sitio en que se celebrare el juicio, fuere menos de 30 millas.

La Regla 40.2 de las de Procedimiento Civil de 1958 dispone que el tribunal que haya ordenado a la persona a quien vaya dirigida una citación producir libros, papeles, documentos u objetos tangibles, a petición de parte, puede imponer la condición de que la solicitud será denegada si la parte a cuyo favor se expide la citación *no anticipa los gastos para presentar los libros, papeles, documentos u objetos tangibles.*

La Regla 40.3 que le sigue dispone que la notificación a una persona de la citación para comparecer se hará mediante la entrega de una copia de la misma a dicha persona, "y *entregándole los derecho correspondientes a un día de comparecencia y el millaje concedídole por ley.*" El Estado Libre Asociado o sus oficiales no tienen que ofrecer el pago de derecho ni de millaje.

El Art. 327 del Código de Enjuiciamiento Civil que se refiere a derechos y costas, dispone que a la parte *a cuyo favor se dicte cualquier sentencia o resolución final,* serán concedidas las costas y que éstas comprenderán: ". . . (3) Dos (2) dólares por cada testigo y por cada día de asistencia a la corte, más millaje para ida y vuelta a su residencia; disponiéndose, que la corte fijará, atendidas todas las circunstancias, la compensación razonable por la asistencia de *testigos peritos.*"

Por una Ley de 12 de marzo de 1908 se dispuso que cuando los médicos en ejercicio en Puerto Rico, cualquiera que sea el cargo que desempeñen, sean requeridos por los tribunales de justicia o sus agentes autorizados para prestar asistencia en casos de heridas, lesiones, envenenamiento, para practicar

autopsias, producir informes en cualquier circunstancia en que hubiere de intervenir la Administración de Justicia, serán considerados como expertos, y recibirán del Pueblo de Puerto Rico los honorarios que en un arancel preparado al efecto se fijare, y percibirán de los fondos del Tesoro de Puerto Rico en pago de sus gastos de viaje la compensación asignada en casos análogos a los funcionarios oficiales. ([2])

Las expresiones de la Sala sentenciadora al efecto de que este Tribunal ha decidido lo que ella dictaminó y que la ley requiere la previa consignación de los honorarios que fijó al médico como condición para exigirle prestar testimonio, parece que no están sostenidas por ley ni por dictamen nuestro.

En *Verdejo v. Lecumberri*, 57 D.P.R. 519 (1940), aplicando el Art. 327 del Código de Enjuiciamiento Civil que se refiere a la concesión de costas a una parte victoriosa, según fue enmendado dicho artículo por la Ley Núm. 94 de 1937, dijimos que al conceder el referido artículo $2 por cada testigo y por cada día de asistencia a corte, más millaje para ida y vuelta a su residencia, no hacía excepción alguna en favor de peritos; y que si debía existir o no tal excepción era cuestión que incumbía al Poder Legislativo.

Posteriormente, en *Costas v. G. Llinás & Co.*, 66 D.P.R. 730 (1946), reafirmamos lo dicho en *Lecumberri* y expresamos nuevamente que los peritos, como testigos que son, están comprendidos en el inciso 3 del Art. 327 según enmendado en 1937, que fija en $2 su compensación por cada día de asistencia a corte. Observamos que fuera de ese inciso los peritos no cabían en ningún otro, ya que de considerarlos com-

---

([2]) Esta ley fue interpretada por el Secretario de Justicia en Opinión de 18 de noviembre de 1957—Opiniones del Secretario de Justicia, Vol. XXVIII—en el sentido de que no era opuesta al Art. 177 del Código Político por cuanto se trata de un nombramiento de jornada parcial; y que el Gobierno de la Capital podía pagarle a los médicos por su comparecencia ante un tribunal a requerimiento del municipio como peritos en favor de la municipalidad, en casos de daños y perjuicios contra dicho municipio.

prendidos en el inciso 6 como se alegaba, precisaría que sus honorarios fuesen un desembolso sujeto a arancel, y no lo eran. Conforme a lo dicho, quedó ahí sin efecto el caso de *Durán* v. *Sucn. Durán*, 55 D.P.R. 633 (1939). En este caso de *Durán* habíamos sostenido como correcta una partida en un memorando de costas, de $100 de honorarios de un perito calígrafo. Justificamos en ese entonces la partida por el hecho de que la prueba había demostrado que el perito calígrafo, antes de la fecha señalada para el juicio, había estado día y medio en la Corte de Distrito de Ponce estudiando y cotejando la firma y escritura del testamento con otras firmas y escritos del testador aceptadas como auténticas. Además, que el perito había ido a Juana Díaz con el abogado de la apelada a examinar otros documentos escritos por el testador, y había asistido al juicio que se extendió durante tres días, aunque no consecutivos.

Dijimos en *Llinás* que con posterioridad al caso de *Durán* habíamos hecho un estudio del Art. 327 en *Colón* v. *Central Cambalache*, 65 D.P.R. 156 (1945), y habíamos llegado a la conclusión de que sólo tenían el concepto de costas los gastos y desembolsos claramente comprendidos en los distintos incisos del Art. 327.

Bajo el criterio de *Durán* v. *Sucn. Durán*, resuelto en noviembre 17, 1939, resolvimos varias semanas después, en enero 30, 1940, el de *Sucn. Mangual* v. *Hastings*, 56 D.P.R. 21, en que se incluyó en un memorando de costas una partida de $25 como honorarios del médico Dr. Comas. Se trataba en este caso de una demanda en reclamación de daños por un accidente de automóvil. Rechazando dicha partida dijimos: "Sólo nos resta considerar la partida de $25 del memorándum de costas concedida a los demandantes como honorarios del testigo Dr. Comas. Este testigo, conforme resulta del récord, vino a declarar sobre el estado en que se hallaba Mangual al llegar al Hospital Municipal de San Juan, el tratamiento a que lo sometió y el hecho de su muerte. Su testi-

monio sobre estos extremos no requería tener él una preparación especial previa para venir a declarar. En tales condiciones el médico, como cualquier otro profesional, se considera como un testigo ordinario y no debe recibir otra compensación que la señalada en el arancel para los testigos, es decir $2 diarios. Véase el artículo 327 del Código de Enjuiciamiento Civil."

Aunque lo resuelto en el caso de *Sucn. Mangual* se atiene literalmente al Art. 327, implícitamente pudo quedar sentado que de tratarse de un testimonio para el cual el testigo médico hubiere necesitado preparación especial previa para declarar, se pudo haber concedido a la parte demandante una cantidad en exceso de los $2. De hecho el caso de *Sucn. Mangual* sólo anticipó la situación de derecho que luego se perpetuó por ley positiva al enmendarse en 1951, y por la Ley Núm. 411 de 77 de mayo de dicho año, el inciso 3 del Art. 327, según rige en la actualidad.

■ Tanto el Art. 327, como todas las decisiones antes citadas giran en torno al resarcimiento a que tiene derecho una *parte victoriosa*, después que se ha dictado una sentencia a su favor. No envuelven la situación del caso de autos en que se le niega a una parte el poder coercitivo del tribunal, a que por ley tiene derecho, para hacer comparecer un testigo si no se consigna previamente y se le paga a ese testigo el precio en dinero que fija para dicha comparecencia y que la Sala sentenciadora ordenó que se le pagara sin haber escuchado el testimonio a prestarse, y sin haber evaluado la naturaleza y utilidad del mismo.

El récord demuestra que se trata de un testigo que las circunstancias pusieron en el curso de la *cadena de hechos* relacionados con la cuestión litigiosa, y que a través de sus sentidos conoció y percibió parte de ellos.

El Dr. Patiño Arca declaró que en adición a su sueldo básico en el Hospital de Distrito de Fajardo donde trabajaba en horario regular, el gobierno le pagaba a razón de $25 por

cada autopsia realizada, y que este pago le producía aproximadamente la suma de $500.00 mensuales sobre su sueldo básico de $1,350. La práctica de las autopsias era una función pagada por el gobierno.

De su declaración surge en forma que no da lugar a dudas que el testigo tenía establecido un arancel o tarifa para declarar en corte que respondía, no al esfuerzo o labor intelectual o material relacionados con la declaración a prestarse en un determinado caso, sino al monto de la cuantía reclamada y en litigio y, equiparando su posición de testigo a la del abogado, creía tener derecho a participar también de los beneficios de la litigación en concordancia con la mayor participación que él veía estaban obteniendo éstos.

Sancionar estos criterios como, consciente o inconscientemente, pudieron haber sido legitimados por el fallo de la Sala, sería desvestir a la impartición de justicia en este tipo de litigios de su correcto sentido de función social *reparadora*—conforme al Art. 1802 del Código Civil, y conforme a la función judicial en si—e inyectarle un sentido ajeno de industria o especulación sobre la tragedia y el sufrimiento humanos que originan estos pleitos. Un único testigo ocular de los hechos, de quien dependiera en absoluto el éxito de la reclamación, podría también querer tener su parte de beneficios.

La facultad ejercida por la Sala puede conducir a la frustración de la justicia, en litigantes insolventes o impedidos de levantar fondos. Precisamente, para evitar frustración de la justicia se ha aceptado como bueno, no obstante la acentuada discrepancia de criterios sobre su virtualidad, el que un abogado cobre sus honorarios según las resultancias del pleito y sobre un por ciento de la compensación.[3] Aun así, esta práctica debe estar efectivamente vigilada e intervenida por los tribunales o por la Legislatura, para evitar que

---

[3] Youngwood, *The Contingent Fee*, The Modern Law Review (1965) Vol. 28, pág. 330.

se pierda el sentido de remuneración razonable por esfuerzo profesional hecho y adquiera la tonalidad de una mera fuente de lucro especulativo. Sería contraproducente ahora, cuando la sociedad ha reconocido el deber y la necesidad de dotar a un litigante pobre o desvalido de asistencia legal gratuita en asuntos civiles para que la justicia no quede trunca, permitir que la justicia resulte frustrada por carecer ese litigante de los medios económicos para pagar el precio que pide un testigo por sentarse a declarar.

No resolvemos que sea legítimo o ilegítimo el precio que el testigo requiere de estos peticionarios por revelar en corte lo que vino a su conocimiento en el curso de una autopsia o en el desempeño de sus demás funciones como médico de una institución gubernamental, y que en el fondo no tiene otra connotación sino la de ser el precio por la venta, para uso en corte, de la información o conocimiento así obtenidos. No estamos prejuzgando esta cuestión en uno u otro sentido.

Resolvemos que no tiene derecho a usar el poder coercitivo de los tribunales como instrumento forzoso del cobro de ese precio en contraposición a la alternativa de privar a un litigante del derecho a tener ese mismo poder coercitivo del tribunal que la ley le concede, para obligar a comparecer un testigo y prestar testimonio en corte.

*Se anulará el dictamen de la Sala de Humacao del Tribunal Superior de 3 de diciembre de 1968 que negó a los peticionarios el derecho a obtener la comparecencia en corte del Dr. Patiño Arca y prestar testimonio en el curso del juicio a menos que previamente se le pagara la cantidad de $400. Lo dispuesto es sin perjuicio del derecho de la parte, de salir victoriosa a que, conforme al Art. 327 del Código de Enjuiciamiento Civil, el Tribunal fije una cantidad razonable por tal comparecencia en el caso de testigos peritos, y sin que quede prejuzgado el derecho que crea tener el Dr. Patiño Arca a convenir y contratar con la parte que lo interesa, el pago de una suma por su testimonio.*

*Se devolverán los autos para procedimientos ulteriores compatibles con lo aquí dispuesto.*