# 96 DTA 132

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

CARMEN R. JIMENEZ ROSADO
Demandante-Peticionaria

v.

DRA. CECIL MARQUEZ GOYCO
Demandada-Recurrida

Núm. KLCE-96-00193

San Juan, Puerto Rico, a 19 de septiembre de 1996

Panel integrado por su presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La parte peticionaria del caso de epígrafe acude ante este Tribunal mediante recurso de *certiorari* en el que nos solicita que revisemos una Orden post sentencia del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 2 de febrero de 1996 y notificada a las partes el 5 de febrero del mismo año. En dicha orden el foro de instancia aprobó el Memorándum de Costas de la parte demandada-recurrida por la cantidad de $5,859.39 luego de que desestimara una demanda por impericia médica instada por la aquí peticionaria. Luego de analizar los hechos del caso y el derecho aplicable, **MODIFICAMOS** la orden del tribunal de instancia con el único objetivo de eliminar una partida concedida como reembolso por el alegado pago de honorarios a un perito de ocurrencia, y así modificada CONFIRMAMOS la Orden del tribunal de instancia.

## I

El 21 de noviembre de 1995, el Tribunal de Primera Instancia, Sala Superior de San Juan, emitió Sentencia desestimatoria en el caso por impericia médica instado por Carmen Jiménez Rosado, y otros, contra la Dra. Cecil Márquez Goyco, su esposo, Dr. Arturo Gigante Báez, la sociedad legal de gananciales compuesta por ambos, y contra varias entidades hospitalarias y sus aseguradoras. La copia de la notificación de esta sentencia fue archivada en los autos el 12 de diciembre de 1995.

Oportunamente, la parte demandada presentó ante dicho foro un Memorándum de Costas en el cual reclamó el reembolso de $5,859.39 como costas. Esta moción fue debidamente jurada por el abogado de la parte demandada conforme lo exige la Regla 44.1(b) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 44.1(b) (1983); véanse, además, *Pérez Cruz v. Hospital La Concepción,* 115 D.P.R. 721 (1984); *Piñero v. Martínez Santiago,* 104 D.P.R. 587 (1976).

El 29 de diciembre de 1995, la parte demandante impugnó la cuantía de las costas concedidas por considerarlas improcedentes y excesivas. En específico, cuestionó la sumas reclamadas por concepto del diligenciamiento de las citaciones de las doctoras Zenaida Díaz de Martinó y María L. Betancourt, la primera perito de la parte demandada, y la segunda perito de ocurrencia; así como las partidas correspondientes a los honorarios pagados a éstas. Las sumas impugnadas fueron las siguientes:

1. Diligenciamiento de citaciones a las doctoras Zenaida Díaz de Martinó y María L. Betancourt.............................................................$135.00

2. Honorarios pagados a la Dra. Zenaida Díaz por su comparecencia al tribunal los días 16, 17 y 18 de octubre de 1995 ..............................................$3,600.00

3. Honorarios pagados a la Dra. María
L. Betancourt.....................................................$1,156.25

**Total de Costas Impugnadas...........................$4,891.25**

La parte demandada replicó a la moción de impugnación de las costas, según lo requirió el foro de instancia. En esa ocasión reafirmó la veracidad y razonabilidad del contenido de su memorándum de costas, por lo que solicitó del tribunal que aprobara el mismo.

Así las cosas, el 2 de febrero, notificada el 5 del mismo mes y año, el foro de instancia aprobó la cuantía de costas reclamada por la parte demandada. Una solicitud de reconsideración presentada por la parte demandante fue declarada No Ha Lugar el 21 de febrero de 1996, determinación que fue notificada el 23 de febrero del mismo año.

Ante este cuadro, el 6 de marzo de 1996, Carmen R. Jiménez Rosado, a través de su abogado, acudió ante este Tribunal mediante Recurso de *Certiorari* con el único objetivo de que revisemos esta determinación. En su petición expresa que la parte co-demandada no aportó prueba de los gastos y costas que reclama, y que los honorarios del perito y del perito de ocurrencia son excesivos.

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II
### -A-

Como es sabido, las costas *"son los gastos incurridos necesariamente en la trámitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro"*, Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, Regla 44.1 (1983); véase, además, *Pérez Pascual v. Vega Rodríguez,* 124 D.P.R. 529 (1989); *Andino Nieves v. A.A.A.,* 123 D.P.R. 712 (1989); *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443 (1985); *Nudelman v. Ferrer,* 107 D.P.R. 495 (1978); *Piñero v. Martínez,* 104 D.P.R. 587 (1976); *Garriga Jr. v. Tribunal Superior,* 88 D.P.R. 245 (1963). Aunque como norma general, su concesión tiene el propósito de *"resarcir a la parte victoriosa en un litigio los gastos necesarios y razonables en que tuvo que incurrir con motivo del mismo"*, *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. a la página 461, el Tribunal

Supremo de Puerto Rico ha reconocido la facultad de los tribunales de imponer el pago de costas en contra de la parte victoriosa y a favor de la parte adversa como forma de sancionar conducta constitutiva de temeridad o frivolidad, *Polanco v. Tribunal*, 118 D.P.R. 350, 359-60 (1987); *Pérez Pascual v. Vega Rodríguez, supra.*

Del conjunto de la jurisprudencia pertinente surgen tres requisitos que determinan la procedencia de la imposición del pago de las costas: (1) que los gastos reclamados como costas sean necesarios; (2) que sean razonables; y (3) que sean gastos en los que efectivamente la parte que los reclama haya incurrido; de ahí que un tribunal no debe aprobar gastos *"innecesarios, superfluos o extravagantes"*, *Garriga Jr. v. Tribunal Superior,* 88 D.P.R. 245, 257 (1963); véase, además, José A. Cuevas Segarra, *Práctica Procesal Puertorriqueña, Procedimiento Civil,* **Publicaciones J.T.S.,** pág. 237 (1986). De igual forma, la jurisprudencia señala que costas *"no son todos los gastos que ocasiona la litigación"*, *Garriga Jr. v. Tribunal Superior,* 88 D.P.R. a la página 252; véase, además, *Andino Nieves v. A.A.A.,* 123 D.P.R. a la página 716.

El caso del pago de honorarios de perito como parte de las costas impuestas a una parte ha recibido particular atención por la jurisprudencia. De ésta surgen varias categorías fundamentales que sirven de guía al juzgador para determinar cuándo son compensables como costas los honorarios pagados a un perito, así como cuándo un tribunal puede compeler a un perito a testificar en un procedimiento judicial sin que tenga derecho a exigir una compensación adicional.

Una primera distinción establecida por la jurisprudencia está fundamentada en términos quién requiere la comparecencia del perito al procedimiento judicial: si ha sido a instancias del tribunal de conformidad con la Regla 23 (1) (c) (4) de las de Procedimiento Civil, 32 L.P.R.A. Ap. III Regla 23 (1) (c) (4) (1983), estamos ante el llamado *"perito del tribunal"*; si ha sido a instancias de una de las partes, estamos ante el *"perito de parte".*

Respecto a esta primera distinción, basta señalar que la norma para el pago de honorarios de perito es distinta en uno u otro caso. En el caso de los peritos del tribunal, la norma consiste en que aunque en su origen el pago de honorarios puede ser compartido por los litigantes, el mismo es recobrable como costas por la parte victoriosa. En el caso de los honorarios pagados a un perito de parte la norma es distinta. Tales honorarios son sólo pagados como costas a la parte que prevalece, como excepción, a discreción del tribunal, y cuando los gastos originados por el perito estén plenamente justificados, *Toppel v. Toppel, infra.* En este sentido, la parte que trajo a un perito como suyo y cuyo pago de honorarios solicita que le sea reembolsado tiene el deber de demostrar que el mismo contribuyó sustancialmente a suplir la necesidad de un perito del tribunal y que el testimonio pericial presentado era necesario para que su teoría prevaleciera, *Rodríguez Cancel v. A.E.E., supra; Meléndez v. Levitt & Sons of P.R.,* 104 D.P.R. 797 (1976), *Toppel v. Toppel,* 114 D.P.R. 16 (1983). En este contexto, el tribunal puede denegar el reembolso de dichos pagos si estima que el testimonio brindado por éste fue irrelevante, inmaterial, o si carecía de la característica de pericia.

Una segunda distinción existente en nuestro ordenamiento jurídico y que a nuestro juicio es pertinente al presente caso, ha sido establecida a la luz del origen del testimonio de quien es utilizado como perito en un procedimiento judicial. A la luz de este criterio la jurisprudencia ha establecido tres categorías de perito: (1) peritos de ocurrencia; (2) peritos intermedios; y (3) peritos en general. Según la jurisprudencia, estas categorías son un *"punto de partida para que el poder judicial identifique y compense a personas llamadas a participar en el proceso que reúnen las características que definen al testigo perito"*, *San Lorenzo Trad. Inc. v. Hernández,* 114 D.P.R. 704, 719 (1983). Además, permiten a los tribunales *"dilucidar cuándo se puede exigir a un perito declarar, bajo qué circunstancias y qué derechos tiene"*, *Id.* a la página 717. Con esto en mente, examinemos estas categorías.

-B-

La categoría de perito de ocurrencia comprende a aquellas personas *"que de antemano han obtenido conocimiento extrajudicial de los hechos a través de observaciones directas o por participación en eventos subsiguientemente pertinentes a la litigación"*, *Id.* a la página 718. En esta categoría el elemento determinante es que el perito en cuestión haya tenido *"percepción inmediata de los hechos"*, por haber intervenido en *"la cadena de hechos relacionados con la cuestión litigiosa, y*

*que a través de sus sentidos conoció y percibió parte de ellos", Rivera Sierra v. Tribunal,* 97 D.P.R. 417, 429 (1969), (citado con aprobación en *San Lorenzo Trad. Inc. v. Hernández, supra).* El perito de ocurrencia acude al tribunal a testificar sobre lo que percibió a través de sus sentidos, aunque el hecho de que posea conocimientos especializados lo coloque en una posición aventajada frente a otras personas para hacer inferencias y llegar a conclusiones sobre asuntos pertinentes al caso. Por el hecho de que tiene participación directa en la cadena de eventos relacionados a la cuestión litigiosa, el perito de ocurrencia posee información irremplazable, no obtenible de ninguna otra persona. De este modo, la característica fundamental de este tipo de perito y que lo distingue del testigo ordinario es que *"utiliza su entrenamiento especial al percibir los sucesos", Boitel v. Cruz,* **92 J.T.S. 7,** a la página 9141 (citando con aprobación a *San Lorenzo Trad. Inc. v. Hernández, supra).*

Este tipo de perito es tratado en nuestro ordenamiento procesal civil como un testigo ordinario, sin que sea acreedor a compensación adicional a la que reciben los demás testigos citados a comparecer al tribunal. Por ello, puede ser compelido a declarar ya sea en una deposición o ante un tribunal sin que tenga derecho a recibir ningún tipo de compensación adicional a lo que dispone la reglamentación vigente para un testigo regular. El sólo hecho de que sea un profesional en su campo no es suficiente para que reclame una compensación superior, *San Lorenzo Trading, Inc. v. Hernández,* 114 D.P.R. a la página 719.

El testigo intermedio, por su parte es aquel perito que está **familiarizado** con los hechos singulares a la controversia *"debido a los estudios específicos que ha efectuado en previsión del futuro o durante el proceso", Id.* a la página 718. Esta categoría comprende a aquel perito que no ha tenido conocimiento directo de los hechos, por no haber sido partícipe en la cadena de eventos, pero que ha hecho estudios relacionados al caso y está familiarizado con los hechos del mismo. Su testimonio, distinto al del perito de ocurrencia es reemplazable, pues, en términos prácticos, su utilidad para el tribunal puede ser reemplazada por otro perito.

Por último, el perito en general es aquel que no ha presenciado hechos o acontecimientos relativos a la cuestión litigiosa ni tampoco ha realizado estudios especiales relacionados al caso. En el caso de este tipo de perito y el perito de intermedio la norma consiste en que son acreedores a una compensación adicional a la que reciben los testigos ordinarios al participar en un procedimiento judicial. De esta forma, no pueden ser compelidos a testificar en un juicio sin que sus honorarios como perito sean satisfechos si así lo exigen.

Con este breve trasfondo doctrinal, analicemos el caso ante nos.

### III

En el presente caso la parte demandada reclamó como costas lo pagado por ella en el diligenciamiento de las citaciones a las doctoras Díaz y Betancourt, así como los honorarios de perito de ambas. Un análisis del expediente del caso nos advierte que en el Informe de Conferencia con Antelación al Juicio la única persona identificada como perito de la co-demandada doctora Márquez Goyco lo fue la doctora Díaz. Los otros co-demandados no expresaron que utilizarían los servicios de perito alguno; véase, Informe sobre Conferencia con Antelación al Juicio a la página 10, Apéndice de la Petición de *Certiorari* a la página 28. Más aún, en la sentencia desestimatoria del caso, el tribunal de instancia específicamente identifica a la doctora Díaz de Martinó como la *"perito anunciada por la doctora Marques [sic]", y a la doctora Betancourt como "testigo y perito de ocurrencia anunciada por la co-demandada doctora Marqués [sic]",* Sentencia a la página 6, Apéndice de la Solicitud de Desestimación de la Petición de *Certiorari* a la página 7.

Un examen detenido de las determinaciones de hechos del tribunal sentenciador nos advierte que la doctora Betancourt tuvo conocimiento directo de hechos pertinentes a la cuestión litigiosa. Al respecto, son pertinentes las siguientes determinaciones de hechos del tribunal de instancia:

*"34. Que el 30 de mayo doña Carmen [la demandante] compareció a la oficina de la doctora Marqués [sic]. Esta le mostró las lesiones a la doctora Marqués [sic]. La doctora Marqués [sic] de inmediato refirió a doña Carmen a la atención de la doctora María Betancourt, dermatólogo, ya que era su impresión que dichas lesiones no eran compatibles con una reacción alérgica.*

*35. Que Doña Carmen, ese mismo día, visitó las oficinas de la doctora Betancourt con el referido de la doctora Marqués [sic]. La doctora Betancourt tomó un historial de doña Carmen reflejando que el 26 de mayo doña Carmen había notado unas picadas en el brazo izquierdo. Que posteriormente se habían desarrollado en muchas lesiones, pero a pesar de eso le habían practicado el 26 de mayo una endoscopía. Desde el día anterior, 29 de mayo, sentía dolor en las coyunturas (artralgia).*

*36. Que la doctora Betancourt indicó que la paciente tenía múltiples lesiones no pruríticas, y describió las mismas como papulas (lesiones elevadas) eritematosas (rojizas) en el área alta del pecho, espalda y brazos, con parchos ("rash") en caderas. Sin lesiones en la planta de los pies ni en la cara. Consideró fotodermatitis y a descartarse ("rule out") lupus sub-agudo.*

*37. Que la doctora Betancourt le recomendó no tomará sol y le ordenó un "ANA Test" [...], un "Lupus Eritematous Cell Test" [...], un CBC, y tomó una muestra de una de las lesiones para una biopsia. Le recomendó Diprolene y que regresara a la oficina con los resultados de los laboratorios ordenados.*

*38. Que el 7 de junio de 1989 doña Carmen regresó a la oficina de la doctora Betancourt con los resultados de los laboratorios ordenados en la visita anterior...*

*40. Que el 7 de junio la doctora Betancourt le diagnosticó lupus sub-agudo o lupus cutáneo..."*

Sentencia, a las páginas 12-13, Apéndice de la Solicitud de Desestimación de la Petición de *Certiorari*, a las páginas 13-14.

Y más adelante expresa:

*"49. Que el testimonio brindado por la doctora Betancourt estuvo sostenido con su récord médico y, más aún, con los resultados de los análisis de laboratorio y biopsia."*

*Id.,* a la página 17.

Las anteriores determinaciones de hechos del tribunal sentenciador nos convencen de que en efecto la doctora Betancourt tuvo participación directa en la cadena de eventos que originó la demanda por impericia médica. Su testimonio versaba sobre sus observaciones directas, sobre lo que percibió por sus sentidos, y sobre cómo procedió a actuar de acuerdo a tales percepciones. Lo anterior, sumado al hecho de que la doctora Betancourt tenía una especial preparación médica, nos mueve a concluir que en este caso ella era un perito de ocurrencia, por lo que de conformidad con la jurisprudencia no tenía derecho a percibir compensación adicional por su comparecencia al tribunal. De hecho el tribunal de instancia podía incluso compeler su comparecencia.

Lo anterior nos lleva a la siguiente interrogante: si como parte de las costas que una parte reclama a otra en su Memorándum de Costas, pueden ser incluidos gastos u honorarios pagados a un perito de ocurrencia.

Según la Regla 44.1 de las de Procedimiento Civil, antes mencionada, costas *"son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento"*, Regla 44.1 de las de Procedimiento Civil, *supra*. Bajo esta acepción los gastos pagados por una parte a un perito general o un perito intermedio traídos por una parte son recobrables como costas, a discreción del tribunal, como excepción y cuando los gastos originados por el perito estén plenamente justificados, *Toppel v. Toppel, supra*, ya que los mismos son gastos necesarios para la tramitación del pleito. No creemos que los honorarios que de forma privada una parte haya convenido con una persona comprendida dentro de la categoría de perito de ocurrencia deban ser recobrables como costas. Nótese que tal perito no es acreedor a compensación adicional alguna por su participación en un proceso judicial. Nuestro ordenamiento jurídico trata a este tipo de perito como un testigo ordinario a los fines de la compensación que deba recibir por su comparecencia al tribunal.

Por tal razón, y una vez hemos determinado que los gastos en los que una parte haya incurrido en el pago de honorarios de un perito que bajo la normativa aplicable constituye un perito de ocurrencia

no son compensables como costas, la partida por este concepto reclamada por la parte demandada en su Memorándum de Costas debe ser eliminada. En todo caso, la parte vencedora tiene derecho al pago de lo que obtendría como costas por lo gastado en la comparecencia de cualquier testigo ordinario de conformidad con la reglamentación vigente. No tenemos evidencia al respecto, por lo que el tribunal de instancia en su momento deberá hacer tal determinación.

Por otro lado, no albergamos dudas de que en esta colaboración de la doctora Díaz está comprendida dentro de los tipos de peritos acreedores del pago de honorarios; véase, Sentencia, a la página 16, Apéndice de la Solicitud de Desestimación de la Petición de *Certiorari*, a la página 17. En este caso, estamos ante la categoría que la jurisprudencia reconoce como perito en general. Aunque era testigo de parte, estamos convencidos, a la luz de la sentencia del foro de instancia, que su participación en el litigio fue particularmente ilustrativa para el juez sentenciador y que a su vez contribuyó sustancialmente a que prevaleciera la teoría de los demandados. De este modo, el pago de sus honorarios es recobrable como costas. Así pues, con respecto a esta partida debemos aún analizar los errores imputados respecto a que la parte que solicitó las costas no presentó evidencia que sustentara sus alegaciones luego de que su Memorándum de Costas fuera impugnado, y de que la suma reclamada era excesiva.

## IV

Una lectura de la Regla 44.1 de las de Procedimiento Civil advertirá que la misma no exige la presentación de documento alguno que acredite la veracidad de las sumas reclamadas como costas. La Regla tan sólo requiere que el Memorándum de Costas sea presentado bajo juramento y que consigne *"que según el leal saber y entender del reclamante o de su abogado, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento"*, Regla 44.1(b), *supra*. El objetivo de requerir a una parte que los documentos que presente al tribunal sean jurados *"es el de someter a la parte [y en este caso al abogado] a la penalidad de perjurio si se probara que el contenido de sus manifestaciones o declaraciones juradas no es cierto"*, *Piñero v. Martínez Santiago*, 104 D.P.R. a la página 590. Por ello, como norma general, una parte no viene obligada a proveer evidencia de que los gastos reclamados como costas, en efecto, fueron gastos incurridos. Sin embargo, la peticionaria nos sugiere en su escrito que tal obligación surge cuando la parte que viene obligada a pagar las costas impugna la cuantía reclamada. En apoyo de su contención cita el caso *Pereira v. I.B.E.C.*, 95 D.P.R. 28 (1967).

La Regla 44 de las de Procedimiento Civil nada dispone al respecto. En *Pereira v. I.B.E.C., supra*, ante una situación similar, el Tribunal Supremo expresó que a la luz de la doctrina establecida previamente en *Garriga Jr. v. Tribunal Superior, supra*, una vez la razonabilidad y necesidad de las partidas señaladas en un Memorándum de Costas había sido impugnada *"los reclamantes debieron aducir prueba justificativa de su necesidad y razonabilidad"*, *Pereira v. I.B.E.C.*, 95 D.P.R. a la página 79. No nos parece que lo anterior haya tenido el efecto de establecer como norma que si la parte que reclama el pago de costas no provee evidencia adicional ante una impugnación de las mismas el tribunal está obligado a denegarlas. *Pereira v. I.B.E.C.* tan sólo reconoce que ante una impugnación de un Memorándum de Costas la forma más apropiada de poner al tribunal en condiciones de adjudicar la controversia es mediante la presentación de aquella evidencia en poder de la parte que justifique la procedencia de las sumas reclamadas como costas. Esta omisión, sin embargo, no es concluyente. En cada caso el tribunal debe evaluar la naturaleza de las sumas reclamadas y determinar si a la luz del procedimiento judicial que llevaron las partes en el caso las partidas impugnadas son razonables. De igual forma, en el ejercicio de su discreción, los tribunales pueden requerir a una parte evidencia que sustente sus alegaciones como forma de rebatir la impugnación efectuada.

En el presente caso, el tribunal de instancia estimó que la parte reclamante de las costas acreditó la veracidad de las sumas reclamadas. En ningún momento el foro de instancia ordenó a dicha parte que sustentara sus alegaciones con evidencia documental. Así, dicho foro estimó que tanto los honorarios reclamados como los gastos incurridos en el diligenciamiento de las citaciones estaban plenamente justificados. Nosotros no hemos encontrado razón alguna para alterar esta determinación.

Así pues, resta entonces considerar la alegación de que las sumas reclamadas por el diligenciamiento de las citaciones de la perito de ocurrencia doctora Díaz y de la perito de ocurrencia

Dra. Betancourt eran irrazonables, así como los honorarios de peritaje reclamados como reembolso por el pago de los honorarios de la doctora Díaz.

En el caso de la partida por concepto del diligenciamiento de las citaciones, poco importa que la persona citada sea un perito, pues la suma de dinero es reclamada por el diligenciamiento de la citación y no en función de la persona que fue citada. Al respecto, la doctrina reconoce que estos gastos son recobrables como costas. En tal caso, el criterio determinante no es que los testigos testifiquen, *"sino que comparezcan al tribunal el día de la citación, a menos que ésta hubiese sido innecesaria o superflua"*, José A. Cuevas Segarra, *supra*, a la página 238. Dada la complejidad de los asuntos presentes en la reclamación, no nos parece que la comparecencia de las doctoras Díaz y Betancourt haya sido innecesaria. Tampoco nos parece que la suma reclamada por el diligenciamiento de las citaciones sea excesiva. Por lo tanto, no variaremos esta partida.

Por otro lado, los honorarios pagados a la Dra. Zenaida Díaz por su comparecencia al tribunal los días 16, 17 y 18 de octubre de 1995 como asesora y perito de la representación legal de los demandados tampoco nos parecen irrazonables. Aunque no testificó durante todo ese tiempo, su comparecencia al tribunal durante esos tres días contribuyó a que la parte demandada pudiera refutar adecuadamente el testimonio de la parte demandante, ya que la doctora Díaz tuvo la oportunidad de escuchar tales testimonios. Por lo anterior, nos parece que su presencia en el tribunal era necesaria.

## V

Por los fundamentos expuestos, **EXPEDIMOS** el auto de *certiorari* y **MODIFICAMOS** la orden recurrida con el único objetivo de eliminar la partida de costas concedidas por honorarios pagados a la doctora Betancourt. Al respecto, el foro de instancia deberá determinar qué cantidad deberá ser reembolsada a la parte demandada por la comparecencia de la misma como testigo de ocurrencia según la reglamentación vigente y lo expuesto en la presente sentencia. Así modificada, **CONFIRMAMOS** la determinación recurrida. **DEVOLVEMOS** el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General