JULIO GARRIGA, JR., peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. ANGEL M. UMPIERRE, JUEZ, demandado; COMPAÑÍA DOMINICANA DE EXPORTACIÓN E IMPORTACIÓN, interventora.

*Número:* C-62-29     *Resuelto:* 2 de mayo de 1963

246

*Francisco Torres Aguiar,* abogado del peticionario; *Ponsa Feliú & Calderón,* abogados de la interventora.

Sala integrada por el Juez Asociado Señor Pérez Pimentel como Presidente de Sala y los Jueces Asociados Señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

¿Qué son costas? ¿Qué gastos están incluidos en ese concepto? ¿Tiene discreción el tribunal sentenciador al imponerlas, y si la tiene, cómo debe ejercerla? Estas cuestiones están planteadas en este recurso.

I

Resuelto un pleito en el Tribunal Superior la parte demandante y a la vez vencedora sometió al tribunal senten-

ciador su Memorándum de Costas, copia del cual se acompaña como Apéndice de esta opinión. (Hemos numerado las partidas de dicho memorándum para hacer referencia a ellas con facilidad.) El allí demandado y aquí peticionario impugnó todas las partidas con excepción de las números 1, 2, 8, 13 y 14.(¹) El día de la vista el peticionario retiró su oposición a las partidas 3, 4, 5, 6, 7 y 9.(²) Quedó en pie la impugnación de las partidas 10, 11, 12 y de la 15 a la 24 inclusives. Para los conceptos y las cantidades de esas partidas nos remitimos al Apéndice.

Previa vista al efecto el Tribunal Superior declaró sin lugar la impugnación y aprobó en su totalidad el Memorándum de Costas.

La posición del demandado recurrente puede resumirse como sigue: No está en controversia el importe de las partidas impugnadas, sino la procedencia de su pago como cuestión de derecho. No procede el pago de la transcripción parcial de evidencia (partida 10) porque la misma no fue ordenada por el tribunal según lo exige el inciso 4 del Art. 327 del Código de Enjuiciamiento Civil; 32 L.P.R.A. sec. 1461(4). No procede el pago de las partidas 11 y 12 (Fianza de embargo y renovación de dicha fianza) "por no ser gastos y desembolsos necesarios incurridos durante la tramitación de este pleito, ni constituir un desembolso necesariamente hecho con relación a la tramitación de este pleito que hubiere estado sujeto a arancel." Tampoco proceden los pagos de las partidas 15 a la 24 por no constituir éstas gastos o desembolsos necesarios que deba pagar el recurrente. Hasta aquí, la posición del recurrente.

---

(¹) Estas son: Radicación de demanda, Emplazamiento, Embargo dirigido al Dr. José M. González, Fianza de no residente y Renovación de dicha fianza.

(²) Embargo en el Registro de la Propiedad de San Juan, Certificación de orden de embargo, Mandamiento de embargo automóvil Ford, Mandamiento adicional Registro de la Propiedad, Gastos al alguacil y Diligenciamiento del mandamiento del referido embargo.

Nos encontramos con dos disposiciones sobre la misma materia: el Art. 327 del Código de Enjuiciamiento Civil y la Regla 44.4 de las de Procedimiento Civil. Se trata, pues, en gran parte de determinar cuál es la intención legislativa que anima esas dos disposiciones y de armonizarlas entre sí, si ello es posible, y si no lo es, de decidir cuál de las dos ha de prevalecer.

Recordemos que aquí no hay un problema de honorarios de abogado. En Puerto Rico los honorarios de abogado no forman parte de las costas. *Sucn. Arroyo* v. *Municipio*, 81 D.P.R. 434, 437–439 (1959). El Art. 327 del Código de Enjuiciamiento Civil enumeraba taxativamente los gastos o desembolsos que estaban comprendidos en el término costas. Su inciso 6 hace posible incluir dentro de dicho término a "cualquier . . . desembolso necesariamente hecho con relación a la tramitación del caso, que la corte crea propia" (sic) pero los limitaba a que estuviesen sujetos a arancel. La imposición de las costas a la parte perdidosa es mandatoria, *Sucn. Arroyo* v. *Municipio*, supra, pág. 438, y el citado artículo debía ser interpretado estrictamente, sin ir más allá de su sentido literal, *Luzunaris* v. *Díaz*, 23 D.P.R. 663 (1916); *Martínez* v. *Pagán, et al.*, 17 D.P.R. 613 (1911); *Modesto* v. *Sucesión Dubois*, 16 D.P.R. 745 (1910).

Las Reglas de Procedimiento Civil de 1958 reglamentan lo concerniente a costas y a honorarios de abogado. La Regla 44.4 mantiene el principio de la obligatoriedad; las costas le deben ser concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto, desde luego, en aquellos casos en que se dispusiera otra cosa mediante ley o por las Reglas. El inciso (b) de la Regla 44.4 dispone cómo se reclamarán, se impugnarán y se concederán las costas. Además dicho inciso define el concepto de costas. Nótese que el antiguo Art. 327 no contiene una definición de lo que son las costas sino que dice que las mismas "comprenderán los

siguientes desembolsos" y enumera una serie de gastos que quedan así comprendidos dentro del término costas. Por el contrario, la Regla 44.4 no enumera una serie taxativa de desembolsos sino que contiene una definición en términos generales. Luego de establecer que "las costas serán concedidas a la parte a cuyo favor se resuelva el pleito . . ." la Regla 44.4 dispone que "la parte que reclame el pago de costas presentará al tribunal . . . una relación o memorándum *de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento.*" (Subrayado nuestro.)

Como puede verse, estamos ante un conflicto entre el Art. 327 y la Regla 44.4 y es necesario que decidamos si se sostiene el criterio taxativo del Art. 327 o se rige la definición de la citada Regla. En otras palabras, o las costas son aquellos gastos enumerados por el Art. 327 y aquellos otros gastos necesarios pero que estuvieren sujetos a arancel, a tenor con el inciso (6) de dicho artículo, o son "todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento." La Regla 72, la cláusula derogatoria de las Reglas de 1958, no nos resuelve el problema porque dejan el Art. 327 vigente "en parte" pero no nos dice qué parte quedó vigente y qué parte está derogada. En cuanto a la intención legislativa del Art. 327 no se plantea ningún problema porque, además de que su texto es explícito, el mismo ha sido interpretado, según señalamos antes. En cuanto a la "intención legislativa" de las Reglas nos hayamos frente a la curiosa situación de que estamos en busca de nuestra propia intención, esto es, de la intención de este Tribunal, porque, como se sabe, las Reglas de Procedimiento Civil fueron adoptadas por este Tribunal y remitidas a la Asamblea Legislativa de Puerto Rico (a tenor con el Artículo V de la Constitución) y al no ser desaprobadas por dicho cuerpo comenzaron a regir.

## II

Escribió Maitland que tal es la unidad de la historia que la manifestación más antigua que se conoce del derecho inglés contiene palabras griegas. (³) Los ejemplos de esa "unidad de la historia" son muchos y uno de ellos—en la historia del Derecho—es este asunto de las costas. Quién debe pagarlas y por qué, es un engorroso problema que una y otra vez ha ocupado la atención de juristas y legisladores desde la antigüedad. El problema recurría, y recurre, matizado de tonalidades éticas. Surge universalmente, aunque lentamente, el principio de que los gastos del pleito debe pagarlos el litigante que reclama aquello a lo cual no tiene razón, el que por su conducta obliga al que la tiene a defenderse o a recurrir a los tribunales para hacer valer su derecho, y el que litiga con el propósito de retardar la justicia. La historia del derecho romano cubre más de un milenio y, como es de esperarse, no siempre la solución fue la misma. Las más de las veces el juzgador tenía discreción para imponer el pago de las costas al litigante perdidoso y al codificarse ese derecho bajo Justiniano en la primera mitad del siglo VI, quedó establecido el principio de que el litigante perdidoso reembolsaría al vencedor las costas del procedimiento. Creen los estudiosos de la historia del derecho que ese principio pasó al derecho medieval europeo a través del derecho cánonico. Lo encontramos expresamente consignado en Las Siete Partidas y más tarde se incorpora a la moderna legislación continental europea. (⁴)

En el antiguo derecho común inglés el concepto de costas como reembolso al vencedor de los gastos del pleito no existía,

---

(³) *Select Essays in Anglo-American Legal History*, ed. por la Association of American Law Schools, Boston; Little, Brown and Company, 1907, pág. 7.

(⁴) Engelmann, *History of Continental Civil Procedure* (1927) págs. 317, 402-403 citado en *Distribution of Legal Expense Among Litigants*, 49 Yale L.J. 699, 704-705 (1940); *Nueva Enciclopedia Jurídica*, Seis ed., Barcelona, 1953, págs. 856-885.

aunque el demandante perdidoso era multado *pro falso clamore* y el demandado perdidoso quedaba a merced (*in misericordia*) del juez, quien le podía imponer multa.(⁵) Esas multas por litigar sin razón no eran reembolsos al litigante vencedor, sino que se destinaban al tesoro público.(⁶) Esa situación del derecho común antiguo varió. Como la multa no representaba ningún beneficio para la parte vencedora los jueces comenzaron en el siglo XIII a conceder costas a la parte victoriosa. En el 1275 mediante el Estatuto de Gloucester se hizo compulsoria la concesión de las costas a favor de los demandantes victoriosos y posteriormente se decretó lo mismo en cuanto a los demandados victoriosos.(⁷)

En cambio en el derecho de equidad inglés desde antiguo el Canciller (*"Chancellor"*) concedió las costas a la parte victoriosa. Se cree que esta práctica del derecho de equidad inglés proviene del derecho canónico, ya que los cancilleres que juzgaban en equidad en la época formativa de ese derecho eran generalmente clérigos.(⁸) Hoy día los tribunales ingleses conceden las costas a la parte victoriosa, incluyendo honora-

---

(⁵) Es curioso que el término del antiguo derecho común inglés para expresar que el demandante perdidoso era multado por su reclamación falsa era "he was '*amerced*' *pro falso clamore*."

(⁶) *Day* v. *Woodworth*, 13 How. 363, 372 (1851); 4 Holdsworth, *History of English Law* (1924) pág. 536-538; Hullock, *Law of Costs* 2 (1792) citado en *Use of Taxable Costs to Regulate the Conduct of Litigants*, 53 Colum. L. Rev. 78, 79; 6 Moore, *Federal Practice*, 2da. ed. (1953) sec. 54.70, pág. 1302.

(⁷) Holdsworth, obra citada, págs. 537; Hullock, obra citada, 4; 49 Yale L.J. 700.

(⁸) Originalmente el Canciller era un oficial ejecutivo, consejero y hombre de confianza del Rey; a veces fueron hombres de excepcional capacidad y patriotismo, adquirieron considerable poder, y en esas ocasiones el Canciller era una especie de Secretario de Estado y Primer Ministro combinados. Cuando los cancilleres no pudieron atender la función judicial (en equidad) se designaron para esa función a religiosos y también a abogados del derecho común.—Plucknett, *A Concise History of the Common Law*, 4ta. ed., 1948, pág. 657; *Guardian Trust Co.* v. *Kansas City Southern Ry. Co.*, 28 F.2d 233, 240 (1928).

rios de abogado y utilizan esa facultad con firmeza para disuadir la litigación viciosa y dilatoria.[9]

En los Estados Unidos el estatuto en la jurisdicción federal, es permisivo, 28 U.S.C. sec. 1920, ("A judge . . . *may* tax as costs the following . . .") y la Regla federal dispone que las costas se concederán a la parte victoriosa a menos que el tribunal no ordene lo contrario, Regla 54 (d).[10] Como puede apreciarse, la citada Regla deposita una amplia facultad discrecional en los tribunales, *Euler* v. *Waller*, 295 F.2d 765 (1961); *Schauffler* v. *United Ass'n of Journeymen & Apprentices, etc.*, 246 F.2d 867 (1957); *Kellems* v. *California CIO Council*, 6 F.R.D. 358 (1946). Se ha resuelto que las costas en la jurisdicción federal no están limitadas a las enumeradas en el estatuto, sino que los tribunales tienen discreción para imponer costas adicionales, *Gotz* v. *Universal Products Co.*, 3 F.R.D. 153 (1943). La resolución del tribunal sobre las costas generalmente no se modifica en apelación, *U.S.* v. *Arizona Canning Co.*, 212 F.2d 532 (1954), pero en casos extremos dicha resolución se puede modificar por abuso de discreción, *McKnight* v. *Akins*, 192 F.2d 674 (1951). Para discusión y jurisprudencia en este sentido véase 3 Barron y Holtzoff, *Federal Practice and Procedure* (1958) secs. 1195 a 1201, págs. 43–77.

▰ Las costas, desde luego, no son todos los gastos que ocasiona la litigación. La mayor parte del costo de litigar la paga la comunidad a través de su organismo político, el Estado. A la comunidad puertorriqueña le cuesta varios millones de dólares al año mantener el establecimiento judicial;

---

[9] Goodhart, *Costs*, 38 Yale L.J. 849, 861–862 (1929); *Deterring Unjustifiable Litigation by Imposing Substantial Costs*, 44 Ill. L. Rev. 507, 509–511 (1949); 53 Colum. L. Rev. 80, n. 13.

[10] La parte pertinente de dicha Regla lee como sigue:
"Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; . . ."

es uno de los precios de la vida pacífica y civilizada. ([11]) Las costas son los gastos incurridos necesariamente en la tramitación del pleito o procedimiento que la ley ordena que un litigante reembolse al otro, o autoriza al tribunal a así ordenarlo. La razón por la cual la ley ordena que el litigante vencido reembolse las costas al vencedor consiste en que el vencedor debe ser resarcido en sus gastos; su derecho no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario. La literatura inglesa y norteamericana, al mencionar este razonamiento, dice que el propósito es *"to make him whole"*. También se señala como otra razón el efecto disuasivo que esa regla tiene sobre la litigación temeraria, viciosa y la que se lleva a cabo con el propósito de retardar la justicia. Nótese que esas dos consideraciones, reembolsar al que fue obligado a litigar y penalizar la litigación viciosa, se tenían en mente por los juzgadores en el derecho romano y en el derecho de equidad inglés al imponer costas. La Regla 54 federal procede de equidad, y como señalamos más adelante, nuestra Regla 44.4 procede de la regla federal, via Utah. ([12])

En la literatura española sobre el particular encontramos que Prieto nos dice que "Se entiende por costas el conjunto de desembolsos que es necesario hacer dentro de un juicio para la persecución o la defensa de un derecho" y añade:

([11]) Para el año fiscal 1962–63 la Asamblea Legislativa de Puerto Rico asignó $6,127,934.00 a la Rama Judicial. Información suministrada por la Oficina de Administración de los Tribunales.

([12]) 3 Barron & Holtzoff, *Federal Practice and Procedure* (1958) pág. 6: 6 Moore, *Federal Practice*, 2da. ed., sec. 54.70[2], pág. 1302; 74 Harv. L. Rev. 1465; Lyman, *"Our Obsolete System of Taxable Costs"*, 25 Conn. Bar J. 148, 150 (1951); Goodhart, Ibid; 53 Colum. L. Rev. 80, n. 13; 27 Colum. L. Rev. 974; 44 Ill. L. Rev. 507, 510–520.

El Código Judicial de los Estados Unidos dispone que cuando un abogado multiplica los procedimientos para aumentar las costas de manera irrazonable y molestosa se le pueda imponer a él personalmente el pago de dichas costas excesivas, 28 U.S.C. sec. 1927; *Weiss* v. *U.S.*, 227 F.2d 72 (1955), cert. denegado 350 U.S. 936, nueva vista denegada 350 U.S. 977.

"La amplitud de la condena en costas se halla determinada por la definición de las mismas. Puesto que son los desembolsos necesarios para la persecución y defensa del derecho, no pueden incluirse en ellas los producidos por actuaciones que no sean necesarias para esas finalidades, ni las que sean debidas a culpa o interés particular del vencedor.

"En atención a este principio, no se computan en la tasación de costas los derechos correspondientes a escritos, diligencias y demás actuaciones que sean inútiles, superfluas o no autorizadas por la ley . . ." [13]

No puede negarse, nos dice Guasp, "que el litigante, por lo menos el litigante vencido, aunque no sea culpable, es la causa inmediata de la existencia del proceso, porque su resistencia o pretensión injustificada da lugar a que no resulte inconveniente que pese sobre él la carga económica de atender a los gastos de dicho proceso; ni cabe desconocer que el problema que plantea la existencia de pretensiones u oposiciones, cuyos titulares carecen de los recursos económicos suficientes para acudir a un proceso, puede resolverse mediante una ordenación satisfactoria del beneficio de pobreza." [14]

Chiovenda expresa:

"El fundamento de esta condena es el hecho objetivo de la derrota; y la justificación de esta institución está en que la actuación de la ley no debe representar una disminución patrimonial para la parte en cuyo favor tiene lugar; pues es de interés del Estado que la utilización del proceso no se resuelva en daño para quien tiene la razón, y por otro lado, es de interés del comercio jurídico que los derechos tengan un valor a ser posible preciso y constante." [15]

## III

En su comentario sobre nuestra Regla 44.4(b), que es la disposición aquí envuelta, nos dice el Comité Consultivo

---

[13] Prieto, *Derecho Procesal Civil* (1956), Tomo II, págs. 568, 575.

[14] Guasp, *Derecho Procesal Civil*, 2da. ed. 1961, Madrid, Vol. I, pág. 585.

[15] *Instituciones de Derecho Procesal Civil*, 1954, Madrid, Vol. III, pág. 355.

que preparó el anteproyecto de reglas que "El texto propuesto no corresponde con regla alguna vigente o federal y es similar al de la Regla 54 (d) (2) de las de Enjuiciamiento Civil de Utah."—*Borrador del Proyecto de Reglas de Enjuiciamiento Civil*, 1954, (mimeógrafo) pág. 109. La parte pertinente de la mencionada regla de Utah se copia al margen. ([16])

En *Hull* v. *Goodman*, 290 P.2d 245, 247 (1955), el Tribunal Supremo de Utah expresó que esa Regla 54 (d) fue tomada por aquel Estado de la regla federal del mismo número. Señala dicho tribunal que la regla de Utah se refiere a "costs and necessary disbursements" (costas y desembolsos necesarios) y señala que el problema queda a la discreción de los tribunales, indicando así lo amplio de esa disposición. En forma no idéntica pero similar la regla nuestra habla de "todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento."

■ Interpretando la Regla 54 (d) federal, de la cual, como se ha visto, realmente provienen las de Utah y Puerto Rico, se ha resuelto que dicha regla deposita amplia discreción en los tribunales para fijar las costas y en este caso se concedieron costas incurridas en concepto de gastos de transportación de tres testigos desde Inglaterra a Nueva York y viaje de regreso. El tribunal estimó que las declaraciones de esos testigos eran relevantes, materiales y necesarias para la disposición del caso. Con acierto expresó que el criterio real es si el testimonio de los testigos era necesario, y no si residían a más de 100 millas del tribunal. *Bank of America*

---

([16]) "The party who claims his costs must within 5 days after the entry of judgment serve upon the adverse party against whom costs are claimed and file with the court a verified memorandum of the items of his costs and necessary disbursements in the action or proceeding stating that to affiant's knowledge the items are correct, and that the disbursements have been necessarily incurred in the action or proceeding. A party dissatisfied with the costs claimed may, within 5 days after service of the memorandum of costs file a motion to have the bill of costs taxed by the court in which the judgment was rendered. . ."—Utah Code pág. 634.

v. *Loew's International Corporation*, 163 F.Supp. 924, 928–929 (1958).

En *Maresco* v. *Flota Mercante Grancolombiana*, 167 F. Supp. 845 (1958) se concedieron costas por gastos por concepto de transportación y comidas de dos testigos que fueron de Bogotá, Colombia, y de otro que fue de Portland, Oregon, a declarar a Nueva York. Se aprobaron por concepto de deposiciones en *Freedman* v. *Philadelphia Terminals Auction Co.*, 198 F.Supp. 429 (1961) y *Bennett Chemical Co.* v. *Atlantic Commodities, Ltd.* 24 F.R.D. 200 (1959). Se aprobaron gastos de traducción en *Bennett Chemical Co.* v. *Atlantic Commodities, Ltd.*, supra. Se aprobaron gastos por copias fotostáticas en *General Gas Co.* v. *Stanchfield*, 23 F.R.D. 58 (1959) y gastos por mapas y fotografías en *Stachon* v. *Hoxie*, 190 F.Supp. 165 (1960).

A la luz del desarrollo del concepto de costas, de su propósito y de su historia, y del origen de nuestra Regla 44.4, el cual hemos señalado, resolvemos lo siguiente:

(1) El Art. 327 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1461, cubre costas judiciales, excepto su inciso 2, que autoriza costas por gastos de copias de escrituras y certificaciones del Registro de la Propiedad y de otros récords oficiales, que fuesen admitidos en evidencia. Sin embargo, dicho inciso se limita a copias y certificaciones para lo cual hay arancel o derechos fijados por ley. La Regla 44.4 enmendó implícitamente dicho Art. 327 ya que autoriza la concesión de costas por "todas las partidas de gastos y desembolsos necesarios incurridos . . .". El resultado es que el requisito del inciso sexto del Art. 327 de que los gastos necesarios para incluirse en las costas deben estar sujetos a arancel, quedó eliminado. La regla faculta al tribunal para juzgar en cada caso cuáles son esos gastos (la palabra desembolsos es un sinónimo de gastos y nada añade) incurridos durante la tramitación del pleito o procedimiento.

(2) Los tribunales sentenciadores ejercerán esa discreción con moderación y examinarán cuidadosamente los memorandos de costas en cada caso, especialmente cuando las costas reclamadas sean objeto de impugnación.

(3) Las costas que contempla la Regla 44.4 son gastos (a) necesarios, (b) incurridos y (c) razonables. Su razonabilidad se entenderá dentro de la realidad económica de Puerto Rico, y en cuanto a los gastos personales, además, se tendrá en cuenta la condición económica de las personas concernidas (testigos y litigantes). No se aprobarán gastos innecesarios, superfluos o extravagantes.

■ Una buena norma consiste en que en caso de que una parte se proponga incurrir en costas de importancia, como por ejemplo, gastos de transportación y hospedaje de testigos, (como en el caso de autos) y deposiciones, se estipulen o se acuerden en la conferencia con antelación al juicio cuando esto sea posible (no necesariamente las sumas, sino la naturaleza de los gastos) y en caso de no ser eso posible se solicite la aprobación del tribunal, claro, con notificación previa a las otras partes. Aquí se puede incluir la transcripción de evidencia. De esa manera el tribunal podrá autorizar aquellos gastos de importancia que crea necesarios y desautorizar los que no crea necesarios. En caso de gastos así previamente desautorizados y en caso de gastos innecesarios, irrazonables o superfluos, una vez impugnados, el tribunal podrá denegar su aprobación. *Prashker* v. *Beech Aircraft Corporation*, 24 F.R.D. 305, 314 (1959), *Freedman* v. *Phila. Terminals*, supra.

■ Los interrogatorios y las deposiciones son generalmente más económicos que la comparecencia personal de testigos que residen lejos del lugar del juicio. En el caso de autos la parte recurrida informa que fue el propio demandado recurrente quien solicitó del tribunal la citación para obligar la comparecencia de los señores Oliva y Hernández quienes tuvieron que venir de Santo Domingo, lo cual el recurrente no ha negado. En su resolución sobre este incidente el tribunal sentenciador expresó que "Consideradas cuidadosamente todas y cada una de las partidas contenidas en el Memorandum de costas sometido por la parte demandante, concluimos que todas y cada una de ellas constituye, a la luz de la Regla 44.4 de Procedimiento Civil, un gasto o desembolso necesario

para la tramitación del pleito que tuvo necesidad de incoar la parte demandante para hacer prevalecer un derecho que le garantizaba la ley." Estimamos que el tribunal sentenciador no abusó de su discreción.

*Se anulará el auto expedido y se confirmará la resolución del Tribunal Superior, Sala de San Juan, de 4 de enero de 1962.*

## APENDICE

*Julio Garriga, Jr.* v. *Tribunal Superior y Cía. Dominicana de Exportación e Importación, C-62-29*

### MEMORANDUM DE COSTAS

AL HONORABLE TRIBUNAL:

La demandante respetuosamente solicita al Tribunal el siguiente memorandum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del presente pleito:

| | | |
|---|---|---:|
| 1. | Radicación de demanda | $ 6.00 |
| 2. | Emplazamiento | 1.25 |
| 3. | Embargo en el Registro de la Propiedad de San Juan | 17.00 |
| 4. | Certificación de Orden de Embargo | .60 |
| 5. | Mandamiento de Embargo automóvil Ford | 3.25 |
| 6. | Mandamiento adicional Registro de la Propiedad | 3.00 |
| 7. | Gastos al Alguacil | 20.00 |
| 8. | Embargo dirigido al Dr. José M. González | 3.00 |
| 9. | Diligenciamiento del Mandamiento del referido embargo | 5.25 |
| 10. | Transcripción parcial evidencia sobre vista del 29 de julio de 1960 | 25.00 |
| 11. | Fianza de embargo S-6214 | 42.50 |
| 12. | Renovación de la referida fianza | 42.50 |

| | | |
|---|---|---:|
| 13. | Fianza de no residente S-6646 | 9.50 |
| 14. | Renovación de dicha fianza | 8.50 |
| 15. | Pasaportes señores Oliva y Hernández para traslado a Puerto Rico | 140.00 |
| 16. | Cable de la demandante a sus abogados en San Juan | 7.25 |
| 17. | Vacuna para traslado de los señores Oliva y Hernández a Puerto Rico | 7.50 |
| 18. | Boletos de avión a Puerto Rico de los señores Oliva y Hernández | 205.00 |
| 19. | Gastos de hotel estadía en Puerto Rico durante veinte días del señor Oliva | 184.90 |
| 20. | Gastos de comida del señor Oliva durante igual término | 122.00 |
| 21. | Protesto de cheque no pagado por el demandado | 15.00 |
| 22. | Llamadas telefónicas de Ciudad Trujillo a San Juan | 209.95 |
| 23. | Legalización de documentos en Santo Domingo a los fines del pleito | 180.00 |
| 24. | Gastos de hotel y comida del señor Hernández en Puerto Rico | 320.00 |
| | TOTAL | $1,578.95 |

San Juan, Puerto Rico, hoy día 13 de septiembre de 1961. (Se omiten firmas y juramento.)