Salas Soler, Juez Ponente
TEXTO COMPLETO DE LA RESOLUCIÓN
Elmendorf Colors, Inc. y Elmendorf Gráfica, Inc. (Elmendorf) comparecen ante nos solicitando la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Caguas, mediante la cual dicho foro declaró con lugar una demanda presentada por la apelada, Nereida Rivera Febus.
En virtud de la referida sentencia se condenó a las apelantes al pago de $52,281.50 por concepto de horas extras, más una cantidad igual como penalidad; $6,051.20 por concepto de vacaciones, más una cantidad igual como penalidad; $12,430.07 por concepto del pago de la hora de tomar alimentos, más una cantidad igual como penalidad; $750.00 por concepto de un beneficio de pago de gasolina; $35,000.00 por los sufrimientos y angustias mentales, más las costas.
Por los fundamentos que más adelante habremos de exponer, modificamos la sentencia apelada.
I
TRASFONDO FÁCTICO Y PROCESAL
El 13 de diciembre de 1996, la apelada Nereida Rivera Febus presentó una querella en contra de la co-apelante Elmendorf Colors, Inc. por alegado discrimen por razón de embarazo y pago de horas extras. La reclamación fue presentada bajo el procedimiento sumario dispuesto en la Ley Núm. 2 de 17 de octubre de 1961,32 L.P.R.A. see. 3118.
Contestada la querella dentro del término dispuesto en ley, comenzó el descubrimiento de prueba. Posteriormente, el 21 de enero de 1997, Elmendorf solicitó la desestimación de la querella bajo el fundamento de que la misma no debía ser tramitada bajo el procedimiento sumario. Esta solicitud fue resuelta en la negativa *772 por el tribunal de instancia. 
El 3 de julio de 1997, la apelada presentó una solicitud de enmienda a la querella y una querella enmendada, a raíz de los hallazgos de un técnico laboral contratado por su representación legal. Con la referida enmienda se pretendía añadir a la querella dos nuevas causas de acción de salarios: horas para tomar alimentos y por vacaciones. La enmienda solicitada fue permitida por el Tribunal.
Así las cosas, el 14 de octubre de 1997, la apelada presentó una moción solicitando que se emitiera sentencia parcial final en cuanto a la reclamación salarial y se señalara vista para la valoración de los daños en cuanto a la reclamación sobre discrimen por razón de embarazo. Esta solicitud también fue declarada no ha lugar por el foro apelado.
La apelada solicitó una nueva enmienda a la querella con el propósito de incluir entre los querellados a Elmendorf Gráfica, Inc., así como para que se le permitiera incluir otra causa de acción por represalias en el empleo bajo la Ley 115 de 20 de diciembre de 1991, 29 L.P.R.A. sec. 194(a). Posteriormente solicitó que se retirara dicha causa de acción. El 10 de junio de 1998, el tribunal dictó una orden en la que daba por retirada la nueva causa de acción y autorizó la inclusión de Elmendorf Gráfica, Inc. como querellado.
Luego de extensos incidentes procesales ulteriores, y finalizado el descubrimiento de prueba, se celebró el juicio en su fondo. Ambas partes presentaron amplia prueba documental y testifical en apoyo a sus alegaciones.
II
Exponemos los hechos que motivan la presente acción según se desprenden de la exposición narrativa presentada y la voluminosa transcripción de los procedimientos.
Rivera Febus comenzó a trabajar para la compañía Elmendorf Gráfica, Inc. el 18 de julio de 1991 en el departamento de contabilidad, específicamente en el área de cuentas a cobrar y nómina. Fue referida a este puesto por el Sr. Jesús Cedeño quien era contable de Elmendorf y de Librotex, librería en donde antes trabajaba la apelada. Para ese momento, su salario era trescientos dólares semanales más el beneficio de plan médico. Su horario era de 9:00 a.m. a 6:00 p.m., y tenía que ponchar hojas de asistencia. Fue adiestrada en sus tareas por la Sra. Rosa Ríos.
Algunas de las funciones de Rivera Febus eran llamar a los clientes, enviar estados de cuentas y pasar la data de los cheques a la computadora. Durante el 1991 trabajó tiempo extra de seis a siete ocasiones. En la compañía no habían posiciones jerárquicas definidas; el Sr. Carlos Cruz, dueño de la compañía, era el supervisor directo de todos en la oficina.
Para el 1993 se le dio una tarjeta de presentación como comptroller. Para ese momento era supervisada directamente por Marisol Hopgood, gerente de la empresa. Firmaba documentos en calidad de contable y se le aumentó el sueldo a $350.00 semanales, aunque no supervisaba a ningún empleado. Disfrutaba como beneficio adicional de una tarjeta para gastos de gasolina. Desde el 1991 hasta el 1993 recibió pago por las horas extras trabajadas y bono de navidad. En 1994 se le aumentó el sueldo nuevamente a $725.00 semanales, además de que se le concedió el beneficio de no tener que ponchar su tarjeta de asistencia, aunque no le pagaban las horas extras.
El 13 de enero de 1996, Rivera Febus se casó con el Sr. José A. Pedroza. Para julio de 1996 quedó embarazada y así se lo informó a sus compañeros de trabajo y a su patrono. Dijo que cuando se lo informó al señor Cruz, éste no le manifestó nada, aunque después la felicitó. Indicó que durante esa misma semana, el señor Cruz puso un anuncio en el periódico El Nuevo Día para contratar a una persona que trabajara durante su maternidad. Por esta razón, en agosto de 1996, se contrató a la Sra. Teresa Fillol. El Sr. Cruz le indicó a la *773 apelada que la contratación de ésta era sólo para cubrir su maternidad y los nueve meses siguientes. Pero por el contrario, un tiempo después de ser contratada se le empleó a tiempo completo por un salario de $350.00 semanales, que a los varios meses se aumentó a $725.00.
Durante este tiempo, el ambiente de trabajo comenzó a deteriorarse. Rivera Febus comenzó a sentirse ansiosa, ya que el Sr. Cruz la trataba mal, hablaba de ella con otros empleados, e inclusive se refirió a ella como “estúpida!'’ e “inepta” delante de otras personas. Después de ocurridos estos incidentes, la apelada fue al doctor quien le recomendó descanso, ya que le encontró la presión alta. Al regresar a su trabajo después del recomendado descanso, se le encomendó la tarea de supervisar a dos de las empleadas, aunque no se le alteró su salario.
Al renunciar la Srta. María S. Hopgood, se reorganizaron las posiciones en la empresa. La Sra. Fillol pasó a ser la encargada de los depósitos bancarios y de la nómina. Como parte de la reorganización, el Sr. Jesús Cedeño impartió normas más estrictas de trabajo a Rivera Febus. Entre ellas, le estableció un horario fijo de 8:00am a 12:00m y de 1:00 a 5:00pm, le quitaron la tarjeta de gasolina y el teléfono celular que pagaba la compañía. 
Para ese tiempo se realizó una auditoría en la compañía que reveló problemas en el área de cuentas a cobrar que dirigía la apelada. Alegadamente, la auditoría reveló que cientos de estados de cuenta de finales del 1994 y del 1995 no se habían enviado. Ante las insinuaciones de que lo ocurrido se debía a la falta de diligencia de la apelada, ésta le indicó al señor Cruz que los problemas en la compañía existían desde 1991.
La apelada nunca fue amonestada de manera alguna. Con anterioridad a su embarazo, nunca recibió ninguna queja del trabajo que realizaba. Durante la auditoría, nunca fue consultada, no se le requirió documento alguno, ni le solicitaron información alguna. En ningún momento se le llamó para discutir los resultados de la auditoría, ni se le suspendió o amonestó por los resultados de la misma.
Dada la situación de ansiedad en la que se encontraba Rivera Febus, su ginecólogo, Dr. Edgardo Prieto, la refirió a su padre el psiquiatra, Dr. Edgardo Prieto Agostini (hijo del ginecólogo), quien le recomendó un tratamiento que incluyó Effexor, Prozac y Xanax.
Del informe realizado por el técnico laboral contratado por la representación legal de la apelada, Sr. Rafael Reyes Limardo, se desprende que según su investigación, Elmendorf le adeudaba a Rivera Febus 1,637.05 horas extras ascendentes a $52,281.50, por vacaciones no pagadas $6,051.20, y, por el período de toma de alimentos trabajado $12,430.07. Según informe del perito, esta cantidad surge de la revisión de 73 tarjetas de las ponchadas por la querellante entre el 18 de julio de 1991 al 29 de diciembre de 1993. La querellante trabajó 257 horas de tomar alimentos, para un promedio semanal de 3.52 horas. Este promedio se utilizó para determinar lo adeudado desde el 18 de julio de 1991 hasta el 4 de diciembre de 1996. Concluyó, además, que se le adeudaba $750.00 por el derecho a los gastos de gasolina.
La apelada recibió bonos de $3,000.00 en 1992, 1993 y 1994. En 1995 recibió un bono de $5,000.00, y en 1996 sin justificación alguna para la reducción, recibió un bono de $200.00. De otra parte, aunque de 1992 al 1995 a Rivera Febus se le pagaron las vacaciones que no disfrutó, en 1996 no se hizo lo mismo.
De otra parte, la testigo de la apelada, Ileana Colón Cario, realizó un análisis financiero de Elmendorf. En su opinión estas compañías operaban sin pérdidas financieras, y no tenían ningún problema en las cuentas a cobrar.
Al Tribunal de Primera Instancia le mereció mayor credibilidad los informes preparados del técnico laboral, Rafael Reyes Limardo; la CPA Ileana Colón Cario, y el psiquiatra Víctor J. Liado, todos en apoyo a las *774 contenciones de la apelada.
Ante los hechos expuestos, el foro apelado concluyó que Rivera Febus no podía ser considerada como empleada exenta de la Ley de Salario Mínimo, en virtud de lo cual determinó que tenía derecho al pago de horas extras y vacaciones no disfrutadas. De otra parte, el tribunal de Instancia determinó que el patrono incurrió en conducta ofensiva hacia la apelada por el mero hecho de estar embarazada. Concluyó que la prueba testifical fue contundente al establecer un patrón de persecución de parte del Sr. Cruz en contra de la apelada.
En virtud de todo lo anterior, condenó a las apelantes al pago $52,281.50 por concepto de horas extras, más una cantidad igual como penalidad; $6,051.20 por concepto de vacaciones, más una cantidad igual como penalidad; $12,430.07 por concepto del pago de la hora de tomar alimentos, más una cantidad igual como penalidad; $750.00 por concepto del beneficio de gasolina; y $35,000.00 por los sufrimientos y angustias mentales.
Inconformes, las apelantes presentan la apelación de epígrafe. Aducen que el Tribunal de Primera Instancia cometió tres errores, a saber:

“PRIMER SEÑALAMIENTO DE ERROR

Erró el Tribunal de Instancia al determinar que la prueba desfilada permita la conclusión de que la demandante no era empleada exenta.

SEGUNDO SEÑALAMIENTO DE ERROR

Erró el Tribunal de Instancia y demostró prejuicio y parcialidad al dirimir el conflicto de prueba existente entre la prueba desfilada por la demandante y conceder $52,281.50, más la penalidad por concepto de horas extras, $6,051.20 por concepto de vacaciones, más la penalidad, $12,430.07 por concepto de hora para tomar alimentos, más la penalidad, $750.00 por concepto de beneficio de gasolina y $35,000.00 por concepto de sufrimientos y angustias mentales por supuesto discrimen.

TERCER SEÑALAMIENTO DE ERROR

Erró el Tribunal de Instancia y demostró prejuicio y parcialidad al aprobar un memorando de costas por la cantidad de $19,490.25. ”

El proceso apelativo revisorio ante este foro se demoró fuera de todo ámbito de razonabilidad por la falta de armonía y comunicación efectiva entre las partes, quedando finalmente perfeccionado y sometido el 28 de julio de 2004.
Examinados los escritos de las partes, la exposición narrativa de la prueba y el derecho aplicable, resolvemos.
1 — <
DERECHO APLICABLE
Nos toca determinar en el presente caso si a la luz de las funciones que realizaba la apelada en Elmendorf, era o no una empleada exenta a los fines de la Ley de Salario Mínimo, Ley Núm. 96 de 26 de junio de 1956. Procede que evaluemos si a la luz de las funciones que realizaba podría ser considerada una “administradora” o una “profesional”.
*775 Durante el período en el cual la apelada laboraba en Elmendorf, la Ley Núm. 96, supra, regulaba los salarios mínimos para aquellas industrias de Puerto Rico excluidas de la aplicación de la Ley Federal de Normas Razonables del Trabajo, así como las vacaciones y la licencia por enfermedad de todas las industrias. 29 L.P.R.A. see. 245. Por disposición del propio estatuto, la. Junta de Salario Mínimo, a través de sus decretos mandatories, fijaba todas estas condiciones de trabajo. Los administradores, ejecutivos y profesionales, según definidos por el Reglamento Núm. 13 de la Junta de Salario Mínimo (Cuarta Revisión, 1990), están excluidos de las garantías laborales que emanaban de dicho estatuto.
El Art. Ill del Reglamento Núm. 13 define el término “administrador” como:

“Cualquier empleado que reúna los siguientes requisitos:

(a) que desempeñe trabajos de oficina o trabajos fuera de oficina que no sean de naturaleza manual, estando el trabajo directamente relacionado con las normas de la dirección de la empresa o con las operaciones generales del negocio del patrono o de los clientes del patrono; y

(b) que usual y regularmente ejerza discreción y juicio independiente; y

(c) 1- que regular y directamente ayude al dueño de la empresa, o a una persona empleada en la capacidad de "administrador" o de "ejecutivo", según estos términos se definen en el presente reglamento; o

2- que realice, solamente bajo supervisión general, trabajo de carácter técnico o especializado que requiera entrenamiento, experiencia o conocimientos especiales; o

3- que ejecute, solamente bajo supervisión general, encomiendas y tareas especiales; y

(d) que rio dedique más del 20% o en el caso de un empleado de un establecimiento de comercio al detal o de servicio, que no dedique hasta el 40% de las horas trabajadas en una semana de trabajo, a actividades que no estén directa o estrechamente relacionadas con el desempeño del trabajo descrito en los Incisos (a), (b)y (c) de este Artículo III; y

(e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos dólares ($200), excluyendo alimentos, vivienda u otros servicios.

(f) también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en los incisos (a) y (b) de este Artículo III y que reciba por sus servicios una compensación fija, o a base de por ciento u honorarios, equivalente a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios. ” (Enfasis suplido)
Asimismo, el Art. V del Reglamento Núm. 13, establece la definición de un “profesional

“a) Cualquier empleado cuyo deber primordial consista en realizar trabajo:

1. Que requiera conocimiento de tipo avanzado en el campo de la ciencia o del saber, usualmente adquirido a través de un curso prolongado de instrucción y de estudio intelectual especializado, a diferencia de una educación académica general, de un aprendizaje y de entrenamiento en el desempeño de procesos mentales, manuales o físicos rutinarios, o

2. de carácter original y creador en un campo reconocido de esfuerzo artístico (en contraposición a trabajo que pueda ser realizado por una persona que posea habilidad y entrenamiento general de naturaleza 
*776
manual o intelectual) y cuyo resultado dependa primordialmente de la inventiva, imaginación, o talento del empleado;

(b) cuyo trabajo requiera el uso de discreción y juicio para llevarlo a cabo;

(c) cuyo trabajo sea de carácter predominantemente intelectual y variable (en contraposición a trabajo rutinario de carácter mental, manual, mecánico o físico) y de tal naturaleza que la producción total o el resultado obtenido no pueda ser medido en relación con determinado periodo de tiempo;

(d) que no dedique más del 20% de las horas trabajadas en la semana de trabajo o actividades que no sean parte esencial y necesariamente incidental al trabajo descrito en los Apartado (a) al (c) inclusive de este artículo V;

(e) que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, equivalente a un sueldo semanal no menor de doscientos cincuenta (250), excluyendo alimentos vivienda y otros servicios; disponiéndose que este Apartado (e) no será aplicable en el caso de un empleado que tenga una licencia o certificado válido que le permita dedicarse a la práctica de la abogacía o de la medicina o de cualquiera de sus ramas, y cuyo trabajo consista en la práctica activa de una de tales profesiones;

(f) también significa cualquier empleado cuyo trabajo cumpla con los requisitos dispuestos en el Apartado (a), Inciso 1 ó 2 de este artículo V y que reciba por sus servicios una compensación fija o a base de por ciento u honorarios, que equivalga a un salario semanal no menor de doscientos noventa y cinco dólares ($295), excluyendo alimentos, vivienda u otros servicios. ”

En el ámbito federal, los profesionales están igualmente exentos de la aplicación del "Fair Labor Standards Act”. 29 U.S.C.A. 213. El Code of Federal Regulations, 29 C.F.R. 541.3, provee un significado de la palabra "profesional" sustancialmente igual al dispuesto por el Reglamento Núm. 13 de la Junta de Salario Mínimo, antes mencionado.
La política pública que ha permeado la aprobación de las leyes laborales en Puerto Rico busca proteger en la mayor medida posible a los trabajadores, forjando así el clima de armonía obrero-patronal que resulta indispensable para el progreso y el bienestar de todos los sectores de la comunidad. Es por esta razón que la exclusión de un empleado de los beneficios que proveen las leyes laborales debe ser clara y debe interpretarse restrictivamente. Delgado Zayas, Ruy, Apuntes para el Estudio de la Legislación Protectora del Trabajo en el Derecho Laboral Puertorriqueño, edición 1996, pág. 30.
Se ha resuelto que para ser profesional es indispensable que el trabajo realizado requiera como deber primordial el utilizar el conocimiento avanzado adquirido en el desempeño de sus labores. Santiago v. CORCO, 114 D.P.R. 267,271 (1983).
La jurisprudencia federal ha interpretado que un Contable que no sea uno Público Autorizado podría ser considerado profesional exento si realiza labores o trabajos que requieran constante uso de discreción y juicio independiente o que no sea inherentemente rutinario. Véase, Delgado Zayas, ob cit., pág. 40.
Aunque la Sra. Rivera Febus tenía un bachillerato en contabilidad, no se desprende que las funciones que realizaba requerían el uso de discreción y/o juicio independiente. Según surge de la transcripción, sus funciones eran archivar estados de cuenta, enviaba facturas pendientes de pago a los clientes; preparación de nóminas. Todas ésas se tratan de trabajos rutinarios. No tenía a su cargo la preparación de estados financieros u otro tipo de labor que pudiese requerir su discreción.
*777 A tenor con la normativa antes expuesta, el Tribunal Supremo ha resuelto que para determinar si una persona es un administrador o un profesional a los fines de ser excluido de las disposiciones de la Ley Núm. 96, supra, es necesario que concurran todos los requisitos previamente citados. Rolón v. Charlie Rental Car, Inc., 148 D.P.R. 420 (1999).
Delgado Zayas expresa en su texto que a los fines de que un empleado sea considerado como un administrador, tiene que realizar un trabajo de importancia sustancial para la dirección del negocio. El mero hecho de que un trabajador realice alguna labor menor de tipo discrecional, no lo convierte automáticamente en un administrador. Rolón v. Charlie Rental Car, Inc., supra. En fin, la discreción y juicio independiente que exige el Reglamento Núm. 13 debe ser real y sustancial sobre asuntos de consecuencia.
En el caso que nos ocupa, somos del criterio que Rivera Febus no cumple con el requisito de que usual y regularmente ejerciese discreción y juicio independiente. Aunque resulta innegable el hecho de que en un momento dado se le confirieron mayores responsabilidades a la apelada, no podemos establecer que ello resultó en que la misma tenía inherencia sustancial y real en los asuntos de la empresa. Por el contrario, de la prueba que desfiló ante el foro de instancia, se desprende que el Sr. Carlos Cruz siempre y en todo momento mantuvo el control de todos los asuntos importantes en Elmendorf.
Rivera Febus no supervisaba a los empleados dentro de la empresa. Tampoco tenía autoridad para despedirlos o contratarlos. Fue contratada para trabajar con la nómina y las cuentas por cobrar. No tenía autoridad para realizar ajustes de precio ni planes de pago. Así las cosas, no podemos concluir que tenía autoridad sustancial en la dirección de la empresa. Ciertamente, su trabajo no requería el uso de juicio y discreción para llevarlo a cabo tal y como lo exige el Reglamento 13.
Confirmamos el dictamen de Instancia en cuanto a la determinación de que Rivera Febus no es una empleada exenta, por lo que efectivamente está sujeta al pago de horas extras, vacaciones y al período de tomar alimentos.
ii.
Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. Argüello v. Argüello, 154 D.P.R. _ (2001), 2001 J.T.S. 127; Trinidad v. Chade, 153 D.P.R. _ (2001), 2001 J.T.S. 10; Quiñones v. Manzano, 141 D.P.R. 139 (1996); Orta v. Padilla, 137 D.P.R. 927 (1995); Vélez v. Srio. de Justicia, 115 D.P.R. 529 (1984); Ortiz v. Cruz Pabón, 103 D.P.R. 939 (1975); Rodríguez v. Concreto Mixto, Inc., 98 D.P.R. 579 (1970).
Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. Argüello v. Argüello, supra. La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987). El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Argüello v. Argüello, supra.
Aunque, de ordinario, el foro apelativo no interviene con la apreciación de la prueba que hacen los tribunales de instancia, sí lo hace cuando un balance racional, justiciero y jurídico de la totalidad de la prueba y de los documentos que obran en autos lleva a conclusiones distintas a las del tribunal de instancia. Negrón *778 Rivera y Bonilla, Ex Parte, 120 D.P.R. 61 (1987). Ahora bien, un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez v. Hosp. La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. Rivera Pérez v. Cruz Corchado, 119 D.P.R. 8 (1987); Vélez v. Srio. de Justicia, supra. En conclusión, reiteramos una vez más, la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Trinidad v. Chade, supra.
En el presente caso, las apelantes no nos ponen en condiciones de modificar en modo alguno las cuantías concedidas en concepto de vacaciones, horas extras y periodo para tomar alimentos. Limitan la discusión de este aspecto del señalamiento de error a exponer que el tribunal de instancia descansó en el informe rendido por el perito Rafael Reyes Limardo. Alegan que la prueba presentada se contradijo en sus determinaciones. No les asiste la razón.
De otra parte, sostienen que el supuesto tratamiento psiquiátrico que se le brindó a Rivera Febus se fundamentó con un expediente médico del que surgen serias dudas sobre la alegada condición de la apelada, y la relación de la misma con los eventos en el empleo. Examinada detenidamente la determinación de daños hecha por el foro de instancia en su sentencia, entendemos que la misma no aparece debidamente sostenida o fundamentada por la prueba presentada. La prueba presentada para sostener los daños y angustias mentales sufridos fue muy conflictiva. Exponemos.
A la luz de la prueba desfilada, no cabe la menor duda que la apelada comenzó su tratamiento psiquiátrico a partir de diciembre de 1997, después de presentada la demanda en el presente caso. Aún así, el Tribunal de Primera Instancia pasó por alto este hecho. No obstante, al haber una determinación de discrimen no cuestionada en el presente recurso, se activó el derecho de la apelada a recibir una compensación por los daños y perjuicios sufridos.
Para la determinación del valor razonable de daños morales y angustias, se exige que el reclamante aporte la evidencia necesaria para establecer que no se trata de una pena pasajera, sino que, en alguna medida apreciable, el reclamante quedó afectado en su salud, bienestar y felicidad. Moa v. E.L.A., 100 D.P.R. 573 (1972). El juzgador debe estar consciente, además, que el dolor humano no es similar ni pecunariamente cotizable. Aunque el dinero no puede ser paragonado con el dolor, puede, no obstante, proporcionar a la víctima cierta compensación que, a pesar de no restaurarle lo perdido, puede procurarle unos placeres y satisfacciones mentales que pueden ayudar a atenuar la pena. Riley v. Rodríguez Pacheco, 119 D.P.R. 762 (1987). El resarcimiento económico consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. El dinero se subrogará en el lugar de la pérdida. García v. Shiley Caribbean, 122 D.P.R. 193 (1988). El monto de una compensación por daños se determina por el valor de los daños. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985).
A tenor con la prueba desfilada en cuanto a este asunto en particular: Dr. Edgardo Prieto Agostini, Dr. Víctor J. Liado, y el Dr. César Reyes Laborde, se modifica por entenderse exagerada la concesión de $35,000.00 otorgada en daños y perjuicios, y se concede la cantidad de $10,000.00.
iii.
En el tercer y último señalamiento de error presentado por las apelantes, se cuestiona la aprobación del Tribunal de Primera Instancia al memorando de costas presentado por la representación legal de Rivera Febus.
*779 Se impugnan las partidas solicitadas con relación a la perito Ileana Colón Cario bajo el fundamento de que las mismas fueron excesivas, extravagantes e irrazonables. Se impugnan, además, las costas correspondientes a los honorarios cobrados por el doctor Prieto Agostini y el doctor Pérez Limardo; los informes de caligrafía rendidos por el Sr. Rafael Viñas; la transcripción de la deposición de la testigo Raquel Espinosa, así como las deposiciones de Rubén Lugo, Odalis Sotomayor y Carmen Ríos. Por último, se impugnan las costas aprobadas por la deposición de Elba Lugo, ya que ésta era testigo de la propia demandante.
La Regla 44.1 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, se encarga de regular la concesión de costas y, al respecto nos dice lo siguiente:
"(b) Cómo se concederán. —La parte que reclame el pago de costas presentará al tribunal y notificará a la parte contraria, dentro del término de diez (10) días contados a partir del archivo en autos de copia de la notificación de la sentencia, una relación o memorándum de todas las partidas de gastos y desembolsos necesarios incurridos durante la tramitación del pleito o procedimiento. El memorándum de costas se presentará bajo juramento y consignará que según el leal saber y entender del reclamante o de su abogado, las partidas de gastos incluidas son correctas y que todos los desembolsos eran necesarios para la tramitación del pleito o procedimiento." (Enfasis suplido.)
"(c) En apelación. —La parte a cuyo favor se dicte sentencia en apelación presentará en la sala del Tribunal de Primera Instancia que decidió el caso inicialmente y notificará a la parte contraria, dentro del término jurisdiccional de diez (10) días contados a partir de la devolución del mandato y conforme a los criterios establecidos en el inciso (b) anterior....". (Enfasis suplido.)
Nótese que la parte victoriosa tiene derecho a cobrar los gastos necesarios incurridos durante la tramitación del pleito. O sea, que según la letra de la ley, el que prevalezca en la causa, tiene derecho a recobrar los gastos incurridos, aun de ganarse el caso sin vista, siempre y cuando dichos gastos fuesen necesarios y hayan incurrido durante la tramitación del pleito.
La jurisprudencia ha interpretado que las costas "son gastos (a) necesarios, (b) incurridos y (c) razonables.... No se aprobarán gastos innecesarios, superfinos o extravagantes." Garriga, Jr. v. Tribunal Superior, 88 D.P.R. 245, 257 (1963). El propósito de esta regla es resarcir a la parte victoriosa y desalentar los pleitos frívolos. Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Andino Nieves v. A.A.A., 123 D.P.R. 712 (1989); J.T.P. Development Corp. v. Majestic Realty, 130 D.P.R. 456 (1992); Ferrer Delgado v. Trib. Superior, 101 D.P.R. 516 (1973).
En Puerto Rico, en una acción civil ordinaria, la imposición de costas a la parte perdidosa es mandatoria, Pereira v. I.B.E.C., 95 D.P.R. 28, 68 (1967); Santos Bermúdez v. Texaco, 123 D.P.R. 351, 355 (1989).
Nuestro Tribunal Supremo, en Auto Serví Inc. v. E.L.A., 142 D.P.R. 321 (1997), dispuso, además, que:

“[l]as costas le serán concedidas a la parte a cuyo favor se resuelva el pleito o se dicte sentencia en apelación, excepto en aquellos casos en que se dispusiera lo contrario por ley o por estas reglas. Las costas que podrá conceder el tribunal son los gastos incurridos necesariamente en la tramitación de un pleito o procedimiento que la ley ordena o que el tribunal, en su discreción, estima que un litigante debe reembolsar a otro.

Como puede observarse, la Regla aludida le impone a los tribunales el deber de conceder las costas a la parte victoriosa en un pleito. Le confiere, además, amplia discreción para determinar las costas que un litigante perdidoso debe pagar.

*780 El propósito conocido de dicha regla "es resarcir a la parte victoriosa en un litigio los gastos necesarios y razonables en que tuvo que incurrir con motivo del mismo.” Rodríguez Cancel v. A.E.E., 116 D.P.R. 443 (1985); Ferrer Delgado v. Tribunal Superior, 101 D.P.R. 516, 517 (1973). Garriga, Jr. v. Tribunal Superior, 88 D.P.R. 245 (1963). Históricamente, la posición de costas a la parte perdidosa ha tenido dos razones fundamentales. La primera es la de restituir al que fue obligado a litigar lo que perdió por hacer valer su derecho.
El derecho de esta parte "no debe quedar menguado por los gastos en que tuvo que incurrir sin su culpa y por culpa del adversario." Garriga, Jr. v. Tribunal Superior, supra. La otra razón es penalizar la litigación inmeritoria, temeraria, o viciosa, y la que se lleva a cabo con el propósito de retrasar la justicia, con el fin de que tal penalidad tenga un efecto disuasivo sobre esa litigación innecesaria y costosa. ” (Énfasis suplido.)
A raíz de lo expuesto anteriormente, es obvio que la parte que prevalezca en el caso tendrá derecho a solicitar el resarcimiento de las costas reconocibles y reembolsables, de haberlo solicitado como dispone la ley, es decir, si cumplió con los requisitos de forma y de tiempo.
La norma general imperante en nuestro ordenamiento procesal civil establece que la parte victoriosa en un pleito, siempre tiene derecho a recobrar las costas. Por tanto, en Puerto Rico, la concesión de las costas en una acción civil ordinaria, la imposición de costas a la parte perdidosa es mandatoria, una vez se reclaman oportuna y adecuadamente las mismas mediante memorando. Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 337 (1998); Auto Servi Inc. v. E.L.A., 142 D.P.R. 321 (1997); Santos Bermúdez v. Texaco, 123 D.P.R. 351, 355 (1989); Pereira v. I.B.E.C., 95 D.P.R. 28, 68 (1967).
El memorando de costas debe presentarse debidamente juramentado en el término de diez días a partir del archivo en autos de copia de la notificación de la sentencia. El término de diez días es improrrogable. Pereira v. I.B.E.C., 95 D.P.R. 28,82 (1967); Cuevas Segarra, José, Tratado de Derecho Procesal Civil, Tomo II, San Juan, Publicaciones J.T.S., 2000, pág. 723.
En las Reglas de Procedimiento Civil, el requisito de juramentar las alegaciones, mociones y otros escritos judiciales es la excepción y no la regla general. Sin embargo, en algunos casos podrá exigirse o no la juramentación. El propósito del juramento es el de someter a la parte a la penalidad de perjurio si se probara que el contenido de sus manifestaciones o declaraciones juradas no es cierto, por lo que carece de eficacia cualquier escrito que bajo las Reglas de Procedimiento Civil deba ser jurado y no lo esté. En el caso de un memorándum de costas en particular, las Reglas así exigen que, en adición, que debe ser sometido dentro del término improrrogable de 10 días contados a partir del archivo en autos de copia de la notificación de la sentencia. Piñero v. Martínez Santiago, 104 D.P.R. 587, 590 (1976). Dicho requisito es insoslayable. Cuevas Segarra, Id., pág. 723.
En el caso de autos, los demandantes-apelados resultaron victoriosos. Por lo que tenía derecho a recobrar los gastos necesarios incurridos durante la tramitación del pleito. El memorando de costas fue presentado dentro del término de diez días. Sin embargo, no cumplió con el requisito de la juramentación. En tales circunstancias, no podía el Tribunal a quo considerar el mismo. Procedía su desestimación.
Ahora bien, dentro de los anejos incluidos se encuentra una declaración jurada prestada por la querellante, la Sra. Rivera Febus, donde hace constar el pago de $121.00 por concepto de gastos de presentación y emplazamiento y la cantidad de $1,500.00 por concepto de honorarios al perito laboral, Dr. Reyes Limardo. Ambas partidas son gastos necesarios, incurridos y razonables. Además, de que sí cumplen con los requisitos dispuestos en la Regla 44.1. En vista de ello, concedemos las mismas como costas.
Por los fundamentos antes expuestos, modificamos la sentencia apelada a los únicos efectos de rebajar la *781 concesión otorgada en daños y perjuicios a $10,000.00 y reducir la concesión de costas a $1,621. En cuanto a los otros aspectos, se confirma la sentencia apelada.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
La Juez Pesante Martínez disiente con opinión escrita.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 15
1. El 11 de julio de 1997, la apelada presentó un recurso de certiorari ante el Tribunal de Circuito de Apelaciones en la que solicitó que se excluyera la presente querella de los efectos del procedimiento sumario. Pidió que el presente caso se dilucidara bajo las Reglas de Procedimiento Civil. Este recurso fue denegado el 30 de julio de 1997.
2. Rivera Febus no tuvo que ponchar tarjetas de asistencia desde 1994 hasta diciembre de 1996. En esa fecha recibió un memorando del Sr. Jesús Cedeño en el que se le informó que de ese momento en adelante tenía que ponchar todos los días y que su horario de trabajo sería de 8:00am a 5:00pm.
3. La Ley 96, supra, fue posteriormente derogada por la Ley Núm. 180 de 27 de Julio de 1998, la que ahora rige estas materias. La nueva Ley eliminó la Junta de Salario Mínimo y transfirió sus poderes cuasi-legislativos al del Departamento del Trabajo y Recursos Humanos. Así las cosas, por haber ocurrido los hechos que originan la presente controversia bajo el anterior estado de derecho, tanto la Ley Núm. 96 como el Reglamento Núm. 13 de la Junta de Salario Mínimo constituyen el derecho aplicable.
4. Véase, apéndice, pág. 654.